Christian SAHAGIAN,
Plaintiff-Appellant,

v.

Walter DICKEY, et al.,
Defendants-Appellees.

No. 85–2623.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1987.
Decided Aug. 14, 1987.

Charlotte Gail Blake, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Daniel S. Farwell, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

In this prisoner's civil rights action, the appellant, Christian Sahagian, asks this court to review the judgment of the district court disposing of his claims that he was denied access to the courts while incarcerated as a Wisconsin State prisoner at the United States Penitentiary in Lewisburg, Pennsylvania (Lewisburg) and at the United States Penitentiary at Marion, Illinois (Marion). The appellees are Walter Dickey, the Administrator of the Wisconsin Department of Health & Social Services Division of Corrections, and Donald Clusen, the Superintendent of the Waupun Correctional Institution. Mr. Sahagian claims that the appellees unconstitutionally denied him access to the courts by repeatedly refusing to provide him with Wisconsin legal materials after he was transferred into the federal prison system. The district court, following the recommendation of the magistrate, granted summary judgment in favor of the appellees on the appellant's Lewisburg claim. As to the Marion claim, the district court, also in conformity with the magistrate's recommendation, granted summary judgment in favor of the appellant and ordered equitable relief but no damages. For the reasons set forth in the following opinion, we reverse the district court's grant of summary judgment on the damages portion of the Marion claim, and remand for further proceedings on that issue. In all other respects, the judgment of the district court is affirmed.

I

Facts

In March 1982, the appellant was convicted of armed robbery while disguised. He was sentenced to imprisonment at the Wisconsin Correctional Institution in Waupun, Wisconsin (Waupun or WCI). Because of overcrowding in the Wisconsin prisons, Mr. Sahagian was transferred to the federal prison system in March 1983.

From September 1983 to May 1984, Mr. Sahagian was incarcerated at Lewisburg. The library at Lewisburg had no Wisconsin legal materials. The appellant began his attempts to obtain access to Wisconsin legal materials shortly after his arrival at Lewisburg. In October 1983, the appellant received a letter from one of the appellees, Mr. Clusen, stating: "Library services are available in the Federal institutions to assist you with your legal work. Necessary materials can be provided through various

library loan programs. I suggest you discuss your needs with appropriate staff at your institution." R. 1, Ex. 4. In November 1983, Mr. Sahagian responded to the appellee's letter by writing: "I am sorry to inform you that the Bureau of Prisons [does] not supply state Law Books to prisoners. I must ask you [again] to furnish me with my much needed request for Wisconsin Law Books to aid me in my State Appeal...." R. 1, Ex. 3. Shortly thereafter, Mr. Clusen responded: "As was indicated to you previously, it is recommended you pursue this matter through the institution library requesting assistance through inter-library loan agreements." *Id.*

In December 1983, while Mr. Sahagian was still at Lewisburg, the Wisconsin Court of Appeals affirmed his armed robbery conviction. In that direct appeal, he had been represented by the Wisconsin State Public Defender (Public Defender). After his conviction was affirmed, the Public Defender notified the appellant that, in her opinion, filing a petition for review in the Wisconsin Supreme Court would be frivolous and she declined to represent the appellant further. Mr. Sahagian was told that he could pursue the petition for review on his own and that, if he chose to do so, the Public Defender was required to file a petition for review that included a statement of the case and appendix with the Wisconsin Supreme Court. Mr. Sahagian decided to file the petition for review, and on January 13, 1984, the Public Defender filed the required statement of the case and appendix with the Wisconsin Supreme Court and secured a thirty-day extension of time for the appellant to file a supplemental petition for review.

On January 28, 1984, the appellant filed a Request for Administrative Remedy with the Federal Bureau of Prisons explaining that he was a Wisconsin state prisoner at Lewisburg who could not get Wisconsin law books from either Wisconsin or Lewisburg. An official of the Bureau of Prisons responded:

> It is the position of the Bureau of Prisons that the state authorities retain the responsibility of providing you access to the state courts through attorneys or other acceptable methods.... I suggest you contact the state authorities again and inform them that the Bureau of Prisons cannot accept this responsibility on their behalf. I can offer you no further relief and your request is denied.

R. 1, Ex. 2.

Mr. Sahagian borrowed money and retained a private attorney who filed the supplemental petition for review. The Wisconsin Supreme Court subsequently denied the petition for review.

In May 1984, the appellant was transferred to Marion. The library at Marion contained a limited amount of Wisconsin legal materials.[1] Wisconsin prisoners at Marion are entitled to make reasonable requests for copying of certain materials by writing to the librarian at Waupun. Legal services from the Wisconsin Public Defender and the Legal Assistance to Institutionalized Persons Program (LAIPP) are also available to Wisconsin prisoners at Marion.

Mr. Sahagian sent three letters to the librarian at Waupun requesting photocopying of legal materials, but received no response to his letters. The Waupun librarian did not receive the appellant's letters. In November 1984, the Public Defender declined to appoint counsel for the appellant's contemplated petition for a writ of habeas corpus because it appeared to be a section 1983 action. In December 1984, the LAIPP declined to assist the appellant in a section 1983 action involving the availability of legal services to Wisconsin prisoners at Marion because of its policy of avoiding

---

1. The magistrate found as follows:

As of April 14, 1983 the library at Marion contained a six-volume set of the complete 1979–1980 Wisconsin Statutes and chapters of the Wisconsin Administrative Code relating to parole and confinement, as well as Wisconsin related additional materials. As of at least October 19, 1984, thirteen volumes of the West's Wisconsin Statutes Annotated, Shepard's Wisconsin citations and some other Wisconsin related materials were added to the library at Marion. Since then a few additional Wisconsin related source materials have been added to the library at Marion.

R. 44 at 3 (citations omitted).

litigation challenging conditions of confinement.

## II

### Proceedings Under Review

A. *Mr. Sahagian's Claims*

Mr. Sahagian filed his *pro se* complaint in September 1984. He alleged that the appellees, in their individual capacities, denied him access to the courts by failing to provide him with state legal materials or assistance from persons adequately trained in the law.[2] Appellant requested declaratory and injunctive relief, and nominal and punitive damages. R. 1 at 6.

B. *The Magistrate's Recommendations*

The case was referred to a a magistrate who, on consideration of the parties' cross motions for summary judgment, issued his recommendations to the district court. R. 44. Finding that there were no disputes as to the material facts, the magistrate concluded that the appellees' motion for summary judgment should be granted on the appellant's claim of denial of access to the courts while at Lewisburg, and that the appellant's motion for summary judgment should be granted on his claim of denial of access to the courts during his confinement at Marion.

1. The Lewisburg Claim

The magistrate concluded that "during his incarceration at Lewisburg, the [appellant] was afforded access to the Wisconsin Appellate Courts by means of the [Public Defender]. Moreover, [Mr. Sahagian had] failed to establish that the alleged restriction of his access to the courts resulted in any prejudice to him." R. 44 at 7. The magistrate recognized that *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers

by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." R. 44 at 6. He noted, however, that "[a] finding that prison officials have deprived an inmate of access to the courts cannot be sustained in the absence of some showing of prejudice." *Id.* at 6–7 (citing *Twyman v. Crisp*, 584 F.2d 352 (10th Cir.1978); *Bach v. Coughlin*, 508 F.2d 303 (7th Cir.1974); *Isaac v. Jones*, 529 F.Supp. 175 (N.D.Ill.1981)).

The magistrate stated that an adequate law library was not available at Lewisburg for the appellant. However, because 1) appellant was represented by the Public Defender in his appeal as of right to the Wisconsin Court of Appeals, 2) the Public Defender filed a statement of the case and appendix with the Wisconsin Supreme Court, and 3) appellant's privately-retained counsel filed a supplemental petition for review with the Wisconsin Supreme Court, appellant was afforded access to the Wisconsin appellate courts and he did not show any prejudice from the alleged restriction of access.

2. The Marion Claim

With respect to Mr. Sahagian's confinement at Marion, the magistrate concluded that "the [appellant's] right to meaningful access to the courts was impaired, because of his failure to receive his requested photocopies of cases from the library at WCI, albeit, perhaps—through no fault of the state." R. 44 at 8. The limited Wisconsin legal materials (which do not include case reports) supplemented by photocopies of materials from the Waupun library and the legal services of the Public Defender and the LAIPP comprise the Wisconsin plan to provide meaningful access to the courts for Wisconsin State prisoners confined at Marion. The Public Defender and the LAIPP had declined to represent Mr. Sahagian. Thus, to attack his judgment and sentence,

---

**2.** Mr. Sahagian also claimed that, through his transfer from state to federal custody, he was deprived of a liberty interest without procedural safeguards. R. 1 at 4–5. The appellant further claimed that he was being deprived of liberty without due process of law inasmuch as he was

not able to attend his parole hearings because he was in federal custody. *Id.* at 5. By order dated September 27, 1984, appellant was granted his request to proceed *in forma pauperis* only on the claim that he was denied access to the courts. R. 2 at 2–3.

"he must rely entirely on the library made available to him." *Id.* The magistrate concluded that the failure of the appellant to receive the Wisconsin cases he requested of the Waupun librarian "seriously restricts what appears to be the [appellant's] sole means to attack his judgment and sentence and is tantamount to a denial of his access to the courts." *Id.* at 8–9.

### 3. Relief Requested

The magistrate found inappropriate the broad relief requested by the appellant.

The [appellant] can be afforded access to the courts without transfer back to Wisconsin and it simply is not feasible to require the State to afford him all the liberties afforded an individual incarcerated in Wisconsin. Furthermore nominal and punitive damages are inappropriate insofar as it is unclear exactly what occurred to prevent the [appellant's] requests from reaching the WCI librarian.

*Id.* at 9. The magistrate recommended that Wisconsin be required to provide Mr. Sahagian with the cases he requested in May 1984 in a timely manner.

### C. *Appellant's Objections to the Magistrate's Recommendation*

Mr. Sahagian filed written objections to the magistrate's recommendations. R. 44A. First, he objected to the magistrate's recommendation to deny his motion for summary judgment on his claim of denial of access to the courts while he was incarcerated at Lewisburg.

As was stated and shown in [appellant's] motion for summary judgment, [appellant] while housed in the U.S.P. Lewisburg was denied meaningful access to Wisconsin State court[s] by being denied access to all Wisconsin legal materials

and the assistance of the Public Defenders Office in order to file a comple[te] Petition for Review to the Wisconsin Supreme Court, Due only to the denial by [appellees], [appellant] was forced to obtain priv[ate] counsel, which created a mon[e]tary loss to [appellant]. Thus, the [appellant] suffered due sole[l]y to [appellees'] actions.

R. 44A at 1. Appellant argued that he did, indeed, show prejudice to sustain his claim.[3]

Mr. Sahagian next objected to the magistrate's recommended remedy as to the Marion claim. "The recommendation doesn[']t provide any relief to [appellant]." *Id.* at 2. Appellant pointed out that he requested declaratory and injunctive relief and damages. He argued that the magistrate's recommended relief does nothing to deter the Wisconsin officials from continuing the violations of the appellant's right of access to the courts. Moreover, he contended that he "must bring a law suit every time he needs photo copying from the State." *Id.* at 2–3.

Finally, the appellant objected to the magistrate's determination that the appellant had not shown how his access to the courts was restricted by the requirement that he pay postage on requests for photocopying from Waupun. Appellant stated that "[i]t is obvious that if the [appellant] can not afford the postage to request photo copying then he can not make the request. By not being able to obtain photo copying in turn denies access to the State Courts." *Id.* at 3.[4]

### D. *The District Court Decision and Order*

The district court issued its Decision and Order adopting the recommendations of the

**3.** In the Decision and Order adopting the magistrate's recommendations, the district court stated that Mr. Sahagian "does not challenge the Magistrate's conclusion that he had meaningful access to the courts while incarcerated at Lewisburg." R. 47 at 3. Our own review of the appellant's written objections to the magistrate's recommendation reveals that Mr. Sahagian did, indeed, challenge the magistrate's conclusion that he had meaningful access to the courts while at Lewisburg. Thus, it is clear that the

appellant has not waived his right to argue that issue on appeal. *See United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1011 n. 1 (7th Cir.1987); *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir.1986); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

**4.** The appellees filed only a letter with the district court stating that they had no objections to the magistrate's recommendation.

magistrate in August 1985. R. 47. The court acknowledged that the appellant had filed objections to the magistrate's recommendations 1) that summary judgment be granted against plaintiff on his claim of denial of access to the courts while confined at Lewisburg, and 2) that the remedy for the denial of access to the courts at Marion should be simply to require the appellees to provide the appellant with the photocopies of the legal materials he had requested from Waupun. The court then, curiously, stated that "[Mr. Sahagian] does not challenge the Magistrate's conclusion that he had meaningful access to the courts while incarcerated at Lewisburg." [5] R. 47 at 3.

The district court rejected as lacking merit the appellant's argument that he was injured financially by the denial of Wisconsin legal materials because he was forced to retain private counsel at his own expense. The court stated:

> Albeit perhaps costly, bearing the expense of legal representation does not rise to the level of a constitutional deprivation.... Perhaps [appellant] has some legitimate basis for commencing an action seeking reimbursement of his legal expenditures. However, the present § 1983 action seeking recovery for constitutional infringements is not the proper vehicle for obtaining such reimbursement.

*Id.* at 3–4. The court then, in contradiction to its earlier statement that it was not required to review *de novo* the conclusion that the appellant had meaningful access to the courts while incarcerated at Lewisburg, stated: "[T]he Court finds that the [appellant] was not denied meaningful access to the courts while incarcerated at Lewisburg." *Id.* at 4.

As to the appellant's objection to the relief recommended to remedy his Marion claim, the district court stated: "The Court finds implicit in [the magistrate's] Recommendation an order requiring the [appellees] to comply, in a timely fashion, with reasonable requests by [appellant] for copies of case reports unavailable to him.

This will ensure [appellant's] future meaningful access to the courts." *Id.*

### III
### Contentions on Appeal

#### A. *Appellant*

##### 1. Lewisburg Claim

Mr. Sahagian argues that, as to his Lewisburg claim, he did object to the magistrate's conclusion that the appellees provided him with adequate access to the courts while he was confined at Lewisburg. Accordingly, argues appellant, he was entitled to *de novo* review of the issue by the district court and he has preserved the claim for this appeal. Further, appellant argues that the district court's conclusion that he did not suffer a deprivation of his constitutional rights is erroneous. He contends that the fact that he was able to borrow money to retain private counsel does not relieve the appellees of their constitutional duty to provide him with access to Wisconsin legal materials. Mr. Sahagian asserts that the appellees should compensate him for the funds he was required to borrow to retain private counsel because his debt was caused by the appellees' unconstitutional refusal to provide him with meaningful access to the courts. He requests that the Lewisburg claim be remanded to the district court for a hearing on liability, and that, if he prevails on liability, he be awarded compensatory damages. Appellant suggests that punitive damages also may be appropriate on the Lewisburg claim.

##### 2. Marion Claim

Before this court, Mr. Sahagian contends that the district court erred in denying, on summary judgment, his request for monetary damages for the unconstitutional denial of his access to the courts while at Marion. He argues that damages must be treated as an issue separate from liability on a motion for summary judgment and, even if liability is clear, summary judgment on damages should not be granted when

---

**5.** *See supra* note 3.

there remains a genuine issue of material fact. The appellant points out that his own motion for summary judgment did not address damages. "Before Sahagian even addressed the issue of what damages would be appropriate, though, his request for damages was denied." Appellant's Br. at 10.

The appellant further argues that the magistrate's recommendation acknowledges the existence of an issue of material fact as to damages. The magistrate wrote: "nominal and punitive damages are inappropriate insofar as it is unclear exactly what occurred to prevent the [appellant's] requests from reaching the WCI librarian." R. 44 at 9. As a result, contends the appellant, the case should be remanded for discovery and a trial on the issue of damages.

On the issue of punitive damages, Mr. Sahagian asserts that the appellees' "repeated refusals to provide Sahagian with meaningful access to the courts while he was incarcerated at Marion may justify an award of punitive damages against them." Appellant's Br. at 11. He reminds the court that he made the first of the requests to Waupun on May 22, 1984—fourteen months before he received the materials. "Even the filing of this lawsuit in September 1984 did not motivate [appellees] to provide the cases." *Id.* at 12. "It ultimately took the magistrate's July 1985 Recommendation to prompt [appellees] to provide Sahagian with these cases." *Id.* The appellant submits that punitive damages are appropriate in the circumstances of this case and that the case should be remanded for further proceedings on the issue of punitive damages. Moreover, he asserts that the relief awarded by the district court is patently inadequate inasmuch as it

> fails to impose any penalty on [appellees] for their admitted deprivation of [appellant's] constitutional right of meaningful access to the courts and thus trivializes that vital right. The ordered relief fails to provide any motivation to state officials to fulfill their obligation to provide meaningful access to the courts. To the contrary, it permits [appellees] to contin-

ue violating the rights of inmates, secure in the knowledge that no sanction will be visited upon them.

*Id.* at 13.

Appellant's final argument on the issue of damages is that he should be awarded nominal damages in recognition of the constitutional violation that occurred while he was at Marion. The appellant contends that each day of delay constituted a separate violation and should be the subject of a separate award of damages.

## B. *Appellees*

### 1. Lewisburg Claim

The appellees maintain that Mr. Sahagian was not denied meaningful access to the courts while at Lewisburg because he was adequately assisted by competent counsel in appealing his criminal conviction. They argue that the appellant "was represented by attorneys at all critical stages in his appeals to the state courts." Appellees' Br. at 6. "The question of how counsel is retained, whether through public assistance or plaintiff's own purse, is immaterial. The *Bounds* court teaches that the purpose of the meaningful access requirement is to 'give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 6–7 (quoting *Bounds*, 430 U.S. at 825, 97 S.Ct. at 1496). The appellees contend that, at Lewisburg, Mr. Sahagian was afforded the "reasonably adequate opportunity" required by *Bounds* and that, appellant has failed to state a *prima facie* case of denial of access to the courts because he has not shown prejudice resulting from the alleged violation.

### 2. Marion Claim

The appellees contend that the district court properly fashioned the appropriate remedy for appellant's claim of the denial of meaningful access to the courts while at Marion. They state that, because they have sent Mr. Sahagian the cases he requested, and because appellant has been transferred back into the Wisconsin correctional system, the issue of meaningful ac-

cess is moot and an additional remedy to appellant would be superfluous. The appellees request that the district court's decision be affirmed in its entirety.

## IV

## Discussion

### A. *Right of Access to the Courts*

#### 1. Generally

■ The due process clause of the fourteenth amendment guarantees state prisoners, such as Mr. Sahagian, access to the courts to present challenges to their convictions or allegations of infringement of constitutional rights. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72. "The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). The guarantee extends to habeas corpus proceedings, *Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969), and to civil rights suits, *Wolff v. McDonnell*, 418 U.S. 539, 579–80, 94 S.Ct. 2963, 2986–87, 41 L.Ed.2d 935 (1974). "The right of access to the courts, upon which *Avery* was premised, is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Id.* at 579, 94 S.Ct. at 2986. The *Bounds* Court enumerated various alternative means that prison officials can use to ensure meaningful access to the courts for inmates, including law libraries. 430 U.S. at 830–31, 97 S.Ct. at 1499–1500. "Any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards." *Id.* at 832, 97 S.Ct. at 1500.

#### 2. Discretionary Direct Appeals

The decisions of the Supreme Court of the United States emphasize that an evaluation of the means that prison officials have made available to ensure meaningful access to the courts cannot take place *in abstracto*. Rather, such an evaluation must take into account the nature of the particular judicial proceeding for which the inmate is preparing. In *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Court held that, at trial and during the first appeal as of right, meaningful access to the courts was provided by the state when the state provided appointed counsel. By contrast, in a subsequent discretionary appeal to the state supreme court,

> the critical issue ... is not whether there has been "a correct adjudication of guilt" in every individual case, *see Griffin v. Illinois*, 351 U.S. [12], at 18, [76 S.Ct. 585, 590, 100 L.Ed.2d 891 (1956)], but rather whether "the subject matter of the appeal has significant public interest," whether "the cause involves legal principles of major significance to the jurisprudence of the State," or whether the decision below is in probable conflict with a decision of the Supreme Court.

417 U.S. at 615, 94 S.Ct. at 2446. Meaningful access is provided when the prisoner has the benefit of

> a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case. These materials, supplemented by whatever submission respondent may make *pro se*, would appear to provide the [state supreme court] with an adequate basis for its decision to grant or deny review.

*Id.* The court held that this "assure[d] the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Id.* at 616, 94 S.Ct. at 2447.

In *Bounds*, while holding that "[i]t is now established beyond doubt that prisoners have a constitutional right of access to the courts," 430 U.S. at 821, 97 S.Ct. at 1494, the Court pointedly distinguished between the types of services necessary to assure meaningful access in filing an initial

complaint or a petition for habeas corpus and those necessary in filing a discretionary appeal of a judgment of conviction. The Court noted that habeas corpus and civil rights actions, "[r]ather than presenting claims that have been passed on by two courts, ... frequently raise heretofore unlitigated issues." *Id.* at 827, 97 S.Ct. at 1498.

> While applications for discretionary review need only apprise an appellate court of a case's possible relevance to the development of the law, the prisoner petitions ... are the first line of defense against constitutional violations. The need for new legal research or advice to make a meaningful initial presentation to a trial court in such a case is far greater than is required to file an adequate petition for discretionary review.

*Id.* at 827–28, 97 S.Ct. at 1498. In implicitly reaffirming *Moffitt* and distinguishing discretionary appeals from habeas corpus and civil rights actions, the *Bounds* Court recognized that the provision of adequate law libraries or adequate assistance from persons trained in the law is not constitutionally required when the prisoner elects to petition for discretionary review of a conviction affirmed in an appeal as of right. Even more recently, in *Pennsylvania v. Finley,* ── U.S. ──, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the Supreme Court reiterated that, in *Moffit,* it had "concluded that the defendant's access to the trial record and the appellate briefs and opinions provided sufficient tools for the *pro se* litigant to gain meaningful access to courts that possess a discretionary power of review." *Id.* 107 S.Ct. at 1994.

### 3. Lewisburg Claim

 Mr. Sahagian argues that the State of Wisconsin was required to provide him with Wisconsin legal materials to aid him in the preparation of his petition for review to the Wisconsin Supreme Court. He contends that the state has an obligation to provide such materials in addition to the statutory obligation of the Wisconsin Public Defender to file a petition for review that includes a statement of the case and appendix with the Wisconsin Supreme Court when an indigent defendant elects to pursue a discretionary direct review that the Public Defender determines is meritless or frivolous.[6]

We must reject the appellant's contention that the appellees have violated his constitutionally-protected right to access to the courts by failing to provide him with Wisconsin legal materials while he was incarcerated at Lewisburg. While the Supreme Court has "consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts," *Bounds,* 430 U.S. at 824, 97 S.Ct. at 1496, "[t]he inquiry is ... whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 825, 97 S.Ct. at 1496. As *Moffitt, Bounds* and *Finley* establish, the right of access to the courts has not been extended to encompass an obligation on the part of a state to provide a law library or legal materials to an inmate pursuing a discretionary direct review.

Here, Mr. Sahagian was represented in his first appeal as of right by the Wisconsin Public Defender. After the appellant's conviction was affirmed in the Wisconsin Court of Appeals, the Public Defender, after evaluating the case, notified him that, in her opinion, filing a petition for review in the Wisconsin Supreme Court would be

---

6. Wisc.Stat. § 809.32(4) provides in pertinent part:

> If a fully briefed appeal is taken to the court of appeals and the attorney is of the opinion that a petition for review in the supreme court under s. 809.62 would be frivolous and without any arguable legal merit, the attorney shall advise the defendant of the reasons for this opinion and that the defendant has the right to file a petition for review. If requested by the defendant, the attorney shall file a petition satisfying the requirements of s. 809.62(2)(d) and (f) and the defendant shall file a supplemental petition satisfying the requirements of s. 809.62(2)(a), (b), (c) and (e). The petition and supplemental petition shall both be filed within 30 days of the date of the decision of the court of appeals.

frivolous.[7] She declined to represent him further. She told the appellant that he was free to pursue the petition for review and that, if he chose to do so, she would file a petition for review that included a statement of the case and appendix with the Wisconsin Supreme Court, as required by Wisconsin law. She informed the appellant that he would be required to file a supplemental petition for review. The Public Defender filed the necessary materials with the Wisconsin Supreme Court and the appellant retained private counsel to file his supplemental petition for review.

We cannot agree that the state was constitutionally required to do more than it did for Mr. Sahagian while he was confined at Lewisburg. It clearly did not deny him meaningful access to the Wisconsin Supreme Court. Indeed, it secured access for him. The appellant's decision to retain private counsel, and the debt thereby incurred, does not result from any breach of a constitutional duty on the part of the state to provide Wisconsin legal materials for the preparation of his petition for review to the Wisconsin Supreme Court. We therefore affirm the district court's grant of summary judgment in favor of the appellees on the Lewisburg claim. There are no genuine issues of material fact as to the Lewisburg claim and the appellees are entitled to judgment as a matter of law.

## B. *Damages for Violation of the Right of Access at Marion*

The district court entered summary judgment in favor of Mr. Sahagian on the liability aspect of the claim that his right of access to the courts was violated by the appellees while he was confined at Marion. The appellees have not cross-appealed that portion of the district court's judgment and therefore we need not address it here.

---

7. Wisc.Stat. § 809.62 provides in pertinent part:

(1) A party may file with the supreme court a petition for review of an adverse decision of the court of appeals pursuant to s. 808.10 within 30 days of the date of the decision of the court of appeals. Supreme court review is a matter of judicial discretion, not of right, and will be granted only when special and important reasons are presented. The following, while neither controlling nor fully measuring the court's discretion, indicate criteria that will be considered:

(a) A real and significant question of federal or state constitutional law is presented.

(b) The petition for review demonstrates a need for the supreme court to consider establishing, implementing or changing a policy within its authority.

(c) A decision by the supreme court will help develop, clarify or harmonize the law, and

1. The case calls for the application of a new doctrine rather than merely the application of well-settled principles to the factual situation; or

2. The question presented is a novel one, the resolution of which will have statewide impact; or

3. The question presented is not factual in nature but rather is a question of law of the type that is likely to recur unless resolved by the supreme court.

(d) The court of appeals' decision is in conflict with controlling opinions of the United States Supreme Court or the supreme court or other court of appeals' decisions.

(e) The court of appeals' decision is in accord with opinions of the supreme court or the court of appeals but due to the passage of time or changing circumstances, such opinions are ripe for reexamination.

The Wisconsin statute providing for discretionary direct review of court of appeals' decisions is analogous to the North Carolina statute governing discretionary appeals to that state's supreme court, which was under consideration in *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). The North Carolina Supreme Court's discretion was guided by N.C. Gen.Stat. § 7A-30(c) (1969), which listed the relevant considerations: "(1) The subject matter of the appeal has significant public interest, or (2) The cause involves legal principles of major significance to the jurisprudence of the State, or (3) The decision of the Court of Appeals appears likely to be in conflict with a decision of the Supreme Court." *Moffitt*, 417 U.S. at 614, 94 S.Ct. at 2445. In *Moffitt*, the Supreme Court declined to extend an indigent's right to counsel to include the appointment of counsel for discretionary reviews. In doing so, the Court stated:

Once a defendant's claims of error are organized and presented in a lawyerlike fashion to the Court of Appeals, the justices of the Supreme Court of North Carolina who make the decision to grant or deny discretionary review should be able to ascertain whether his case satisfies the standards established by the legislature for such review.

*Id.* at 615, 94 S.Ct. at 2446. We believe the same applies to the Wisconsin Supreme Court's ability to evaluate a cause for discretionary review under the Wisconsin statute.

The district court also entered summary judgment on the issue of the appropriate relief to be granted Mr. Sahagian. The court adopted the recommendation of the magistrate requiring the appellees to provide copies of the cases requested by the appellant in his letter of May 22, 1984 to the Waupun librarian. The district court clarified the recommendation of the magistrate and ordered that the appellees were to comply in a timely fashion with the appellant's future reasonable requests for copies of case reports. In ordering only the injunctive relief, the district court adopted the recommendation of the magistrate that "nominal and punitive damages are inappropriate insofar as it is unclear exactly what occurred to prevent the [appellant's] requests from reaching the WCI librarian." R. 44 at 9. In the same manner, the court rejected the appellant's requests that he be transferred back into the Wisconsin prison system and that Wisconsin be required to use the Shawnee Library System copying service.

■ We believe that the district court did not properly dispose of the appellant's damages claim. First, the district court did not consider an award of nominal damages. "[N]ominal damages ... are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." *Memphis Community School Dist.* v. *Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986); *see Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978); *Redding v. Fairman,* 717 F.2d 1105, 1119 (7th Cir.1983) ("Nominal damages are not compensation for loss or injury, but rather recognition of a violation of rights."), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). Here, a violation of Mr. Sahagian's right of access to the courts while he was confined at Marion is established. Nominal damages are appropriate to recognize that violation. Accordingly, we award the appellant nominal damages of $1. *See Ustrak v. Fairman,* 781 F.2d 573, 581 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986); *Kincaid v. Rusk,* 670 F.2d 737, 746 (7th Cir.1982).

■ Appellant also had requested punitive damages. "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Community School Dist.,* 106 S.Ct. at 2542 n. 9; *see Carey,* 435 U.S. at 266, 98 S.Ct. at 1054 (punitive damages awarded to deter or punish malicious deprivations of rights). Punitive damages may be available without actual loss to the plaintiff if there is a showing of aggravating circumstances or malicious intent, *Endicott v. Huddleston,* 644 F.2d 1208, 1217 (7th Cir.1980), or "if the defendant's conduct involves reckless or callous indifference to the plaintiff's rights," *Perry v. Larson,* 794 F.2d 279, 286 (7th Cir.1986); *see Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *McKinley v. Trattles,* 732 F.2d 1320, 1326 (7th Cir.1984). We do not believe that this issue can be resolved in a principled fashion on summary judgment.[8]

---

8. If all the material issues of fact underlying a claim, including the amount of damages, are established and on the basis of applicable substantive law the claimant is entitled to judgment, a summary judgment including the award of damages may be appropriately rendered. But where, liability of the defendant being established as a matter of law, there is a genuine dispute as to the amount of damages, a summary judgment, interlocutory in character, may be rendered for the claimant solely on the issue of liability, and the amount of damages left for determination in the appropriate manner.

6 J. Moore, *Moore's Federal Practice* ¶ 56.17[18] (2d ed. 1986) (footnotes omitted).

As a general rule, where the resolution of any issue, including one of damages, requires an evaluation of motivation and intent, summary judgment is inappropriate. *See White Motor Co. v. United States,* 372 U.S. 253, 259, 83 S.Ct. 696, 699, 9 L.Ed.2d 738 (1963); *Bartman v. Allis-Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir. 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *Cedillo v. International Ass'n of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 11 (7th Cir.1979).

There are exceptions to this general rule, *see, e.g., Moskiewicz v. United States Dep't of Agric.,* 791 F.2d 561, 566 (7th Cir.1986) (failure to produce evidence in the record raising a material question of fact regarding the intentional and willful nature of the defendants' actions); *Perry v. Block,* 684 F.2d 121, 129 (D.C.Cir.1982) (no evidence suggesting defendant's actions willful or deliberate), but those exceptions involve

 

Our review of the record reveals that there remain questions of material fact as to the availability to the appellant of punitive damages.[9] It is, as the magistrate identified, "unclear exactly what occurred to prevent the [appellant's] requests from reaching the WCI librarian." R. 44 at 9. There is also a question of fact as to the reasons for the appellees' failure to ensure that the photocopied legal materials were sent to the appellant as soon as they were aware that the appellant had requested them. Here, the magistrate noted that the Waupun librarian's failure to respond to the appellant's request after she was made aware of them is "mystifying." *Id.* Summary judgment on the issue of punitive damages was thus inappropriate because, as we have illustrated, there remain genuine issues of material fact. *See* Fed.R. Civ.P. 56(c).

In holding that the district court erred in granting summary judgment on the issue of punitive damages, we do no more than hold that there remain controverted issues of fact that must be resolved by the district court. We emphasize that we do not—and on this record cannot—resolve that issue. It is for the district court, not this court, to address that matter in the first instance.

V

Conclusion

For the reasons set forth in the foregoing opinion, we affirm that portion of the judgment of the district court that grants summary judgment in favor of the appellees on the Lewisburg claim. We reverse that portion of the judgment of the district court that grants summary judgment on the issue of the appropriate remedy for the Marion claim and remand for further proceedings consistent with this opinion.

Each party shall bear its own costs of this appeal.

IT IS SO ORDERED.

cases in which the non-moving party had not raised a question of material fact as to motive or intent. Here, as we have stated in the text, there remain genuine issues of material fact on the damages issue.

9. We note that neither the appellant's motion for summary judgment, nor the appellees' cross-motion for summary judgment addresses the issue of the appropriate remedy for the Marion claim. Appellant's motion for summary judgment and brief in support ask solely for summary judgment on the liability aspect of the Lewisburg and Marion claims. R. 35. Similarly, the appellees' cross-motion for summary judgment, R. 40, and their brief in opposition to the appellant's motion and in support of their own motion, R. 39, addressed only the issue of liability as to the Lewisburg and Marion claims.