In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3140

Gregory May,

Plaintiff-Appellee,

v.

Michael F. Sheahan,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 0395--David H. Coar, Judge.


Argued June 2, 2000--Decided September 8, 2000


    Before Flaum, Chief Judge, and Evans and Williams,
Circuit Judges.

    Williams, Circuit Judge.  Pretrial detainee
Gregory May brought suit against Cook County
Sheriff Michael Sheahan and unnamed Sheriff's
Department employees, alleging that the
conditions of confinement faced by detainees
taken to Cook County Hospital are
unconstitutional in several respects, as well as
illegal under the Americans with Disabilities Act
(ADA). Sheahan moved to dismiss May's suit in the
district court on a variety of grounds, including
qualified immunity. The district court concluded
that Sheahan has qualified immunity from May's
ADA claim, but otherwise denied Sheahan's motion
to dismiss. Sheahan has filed this interlocutory
appeal to challenge the district court's
rejection of his qualified immunity defense with
respect to May's surviving claims. We affirm.

I

    In early January 1999, Gregory May was arrested
for possession of a controlled substance. Unable
to post bond, May was held at Cook County Jail in
the custody of Cook County Sheriff Michael
Sheahan, who oversees the jail. Seven days later,
May, who suffers from AIDS, was taken by
ambulance to Cook County Hospital. At the
hospital, May claims he was subject to various
Sheriff's Department policies that violated his

rights.

One such policy allegedly requires hospital detainees to be shackled, hand and foot, to their beds despite the 24-hour presence of an armed guard. May claims that as a result of this policy he has been shackled to his bed 24 hours-a-day, which has caused him physical and emotional pain and has impeded his ability to assist in his own defense. Another policy supposedly provides that hospital detainees will not be taken to assigned court dates and will not be otherwise accommodated (by telephone or video conference, for example). Pursuant to this policy, May claims that he has been unable to present a motion to reduce his bond or attend any court appearances. Still other policies allegedly restrict or deny hospital detainees access to their lawyers, visitors, legal materials, telephones, typewriters or computers, books and magazines, and recreational activities. According to May, because of these policies he has been denied access to his attorney, has been unable to receive visitors, has been prevented from assisting in his own defense, and has had limited or no access to various ordinary amenities of confinement in Cook County Jail.

Based on these allegations, May asserted four claims against Sheriff Sheahan: (1) that the different treatment afforded jail detainees and hospital detainees violates his constitutional right to equal protection; (2) that Sheahan's restrictive hospital detainee policies violate his constitutional right of access to the courts; (3) that Sheahan's policy of shackling all hospital detainees to their beds around the clock violates his constitutional right to freedom from bodily restraint; and (4) that Sheahan's restrictive hospital detainee policies violate the ADA. Sheahan filed a motion to dismiss May's complaint under Fed. R. Civ. P. 12(b)(6), arguing, among other things, that qualified immunity protected him from liability. The district court granted Sheahan's motion with respect to May's ADA claim against Sheahan in his individual capacity on qualified immunity grounds, but denied the motion in all other respects. Exercising his right to take an interlocutory appeal from an order rejecting a qualified immunity defense, see Mitchell v. Forsyth, 472 U.S. 511, 524-30 (1985), Sheahan now appeals the district court's qualified immunity rulings on May's three constitutional claims.

II

Before we come to the merits of Sheahan's appeal, we must address a jurisdictional question. The order Sheahan appeals decided a

motion to dismiss directed at May's Amended Complaint. While this appeal was pending, however, May twice further amended his complaint, both times with the district court's permission, so that his Third Amended Complaint now appears to be the operative complaint in the district court./1 If these subsequent amended complaints have, in fact, superseded May's original Amended Complaint, the present appeal would be moot because there would no longer be a live dispute over whether Sheahan is entitled to qualified immunity based on the allegations in the Amended Complaint. Cf. Chan v. Wodnicki, 67 F.3d 137, 140 (7th Cir. 1995) (fact that trial occurred rendered pre-trial appeal moot); 13A Charles Alan Wright et al., Federal Practice and Procedure sec. 3533.10, at 436 (2d ed. 1984). Thus, this appeal would have to be dismissed for lack of jurisdiction. See Arizonans for Official English v. Arizona, 520 U.S. 43, 67-74 (1997); Wright et al., supra, sec. 3533.10, at 436.

Such a result, however, depends on whether May's second and third amended complaints supersede his original Amended Complaint, a question that turns on the district court's authority to accept the second and third amended complaints despite the pendency of this appeal. As a general matter, a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). Under this rule, the district court retains jurisdiction to act only if the order being appealed or the proceeding before the district court is a discrete matter ancillary to the issues under consideration in the other court. Kusay v. United States, 62 F.3d 192, 193-94 (7th Cir. 1995).

Applying this rule to interlocutory qualified immunity appeals under Mitchell v. Forsyth, supra, Apostol v. Gallion, 870 F.2d 1335, 1337-38 (7th Cir. 1989), held that a notice of appeal presumptively deprives the district court of jurisdiction to proceed with a trial on the merits of the claims on appeal. The Apostol court concluded that whether a public official asserting immunity should face a trial "is precisely the aspect of the case involved in the appeal" because the ultimate question in a Forsyth appeal is whether a public official should have to undergo the burdens of litigation. 870 F.2d at 1338 (internal quotations omitted). In this appeal, we face the related but unresolved issue of whether a district court retains jurisdiction to allow proceedings short of trial to go forward during the pendency of a proper Forsyth appeal.

To resolve this issue we must determine whether such proceedings are "aspects of the case involved in the appeal." In the years since Apostol, the Supreme Court has made clear that a Forsyth appeal implicates more than just a public official's right to avoid a trial, it also protects a public official from burdensome pretrial proceedings, including, most notably, discovery. Behrens v. Pelletier, 516 U.S. 299, 305-08 (1996). Thus, there can be no doubt that a Forsyth appeal divests a district court of the authority to order discovery or conduct other burdensome pretrial proceedings.

But what about a district court's authority to accept an amended complaint? It might be argued that the filing of an amended complaint places little or no particular burden on a defendant public official and, thus, does not involve (and is ancillary to) whether the public official should have to undergo the burdens of litigation. Moreover, allowing a district court to accept an amended complaint during the pendency of a Forsyth appeal might better conserve judicial resources on appeal by short-circuiting (that is, making moot) any appeal involving a complaint on which the plaintiff no longer wishes to stand. Under such a rule, successive Forsyth appeals involving successive complaints would be less likely.

Ultimately, however, these arguments are not persuasive. To begin with, an order allowing the plaintiff to file an amended complaint that supersedes the complaint at issue in a pending Forsyth appeal plainly implicates "an aspect of the case involved in the appeal." The question a court of appeals must answer in a Forsyth appeal following the denial of a motion to dismiss is whether the defendant public official is entitled to qualified immunity (and can therefore avoid the burdens of further litigation) based on the allegations in the plaintiff's complaint. Behrens, 516 U.S. at 306-09; Forsyth, 472 U.S. at 526. Allowing a plaintiff to alter the allegations in his or her complaint would have an obvious effect on a pending Forsyth appeal. Thus, unlike certain other interlocutory appeals, a Forsyth appeal is not the sort of discrete and ancillary matter that can be decided in isolation from the remainder of the case against the public official in his or her individual capacity./2 Stewart v. Donges, 915 F.2d 572, 576 (10th Cir. 1990).

Moreover, allowing a plaintiff to file an amended complaint while a Forsyth appeal is pending does place a litigation burden on a defendant public official. In response to each amended complaint, the public official will

likely want to file an answer and a motion to dismiss, and possibly appeal any unfavorable decision. Having to take these steps compromises a defendant public official's right to avoid the burdens of litigation. Of course, depriving the district court of jurisdiction to accept an amended complaint during a Forsyth appeal will not forever prevent a plaintiff from amending his or her complaint, but it will give the court of appeals the opportunity to both pass on many of the allegations the plaintiff will likely end up relying on and offer guidance to the district court (and the parties) on the legal issues involved in the case. By doing so, the court of appeals can limit the burden on the defendant public official in responding to any post-appeal amended complaint, a result consistent with the purpose of a Forsyth appeal.

Furthermore, the risk that judicial resources might be wasted by successive Forsyth appeals regarding complaints the plaintiff no longer wishes to stand on is mitigated by two facts. First, as the Supreme Court has recognized, successive Forsyth appeals are uncommon. Behrens, 516 U.S. at 310. This makes sense since successive appeals on what will typically be similar, if not identical, issues only add to the litigation burdens faced by public officials. The incentive is for public officials to wait for a point in the case when they have a chance to dispose of all the claims against them without the risk that the plaintiff will subsequently file (and the district court will accept) a superseding amended complaint. Second, district judges are divested of jurisdiction over aspects of a case involved in a Forsyth appeal only if the appeal is colorable. Apostol, 870 F.2d at 1339. If a district court certifies the appeal to be frivolous, it may proceed forward with the case despite the pendency of the appeal. Id.; see also Behrens, 516 U.S. at 310-11 (approving this practice). Thus, district court proceedings need not be delayed by successive appeals that raise only issues previously decided.

Finally, to the extent that the case law relating to a district court's jurisdiction while a Forsyth appeal is pending tends to support any particular resolution of the precise issue presented by this case, it tends to support our resolution. For instance, in an Eleventh Amendment interlocutory appeal that relied on Apostol in determining whether the district court retained jurisdiction during the appeal, this court described Apostol's holding broadly as requiring a stay of all proceedings to protect a defendant's right to be free of litigation. Goshtasby v. Board of Trustees, 123 F.3d 427, 428 (7th Cir. 1997). Likewise, the Tenth Circuit has

concluded, albeit in dicta, that "an interlocutory appeal from an order refusing to dismiss on . . . qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant." Stewart, 915 F.2d at 576. In accordance with this authority, and for the compelling reasons detailed above, we conclude that a Forsyth appeal deprives a district court of jurisdiction to accept an amended complaint filed while the appeal is pending. Therefore, the amended complaints May filed while this appeal was pending are nullities and the complaint in effect when this appeal was filed, his original Amended Complaint, is the operative document. Accordingly, this appeal is not moot, and our jurisdiction is secure.

III

Government officials performing discretionary functions are entitled to a qualified immunity that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether an official may be held personally liable for his or her unlawful actions, therefore, turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotations omitted). In order to be "clearly established," the contours of a right asserted must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, a plaintiff need not show that the very action in question has previously been held unlawful. Id.

In applying this legal framework to review a qualified immunity claim, we ask two questions: (1) whether the plaintiff has asserted a violation of a constitutional right, and (2) whether the applicable constitutional standards were clearly established at the time in question. Levenstein v. Salafsky, 164 F.3d 345, 351 (7th Cir. 1998); Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996). In answering these questions, however, we do not abandon the ordinary standards of review. Therefore, since Sheahan's qualified immunity claims arise from a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we review the district court's ruling de novo, accepting as true May's factual allegations and drawing all reasonable inferences in his favor. Levenstein, 164 F.3d at 347.

A. Equal Protection Claim

In support of his equal protection claim, May alleged that pursuant to the policies of Sheriff Sheahan and for no legitimate reason, pre-trial detainees housed in Cook County Jail are treated differently than those at Cook County Hospital. Specifically, according to May's complaint, hospital detainees, unlike jail detainees, are not taken to court on assigned court dates and are shackled to their beds. Likewise, again according to May's complaint, hospital detainees do not have the same access as jail detainees to lawyers, legal materials, reading materials, various prison programs, and visitors. In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest. Hudson v. Palmer, 468 U.S. 517, 523 (1984) (citing Lee v. Washington, 390 U.S. 333 (1968) (per curiam)); Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988).

Sheahan primarily argues that hospital detainees and jail detainees do not warrant equal treatment because they are not similarly situated and different treatment is rationally related to security concerns. It is not the case, however, that any difference in the nature of a detainee's confinement justifies different treatment. See Williams, 851 F.2d at 881-82 (affirming a decision finding an equal protection violation in the different treatment afforded two groups of prisoners). Sometimes detainees in different sorts of confinement are similarly situated for the purposes of the challenged policy. Therefore, as the district court recognized, the problem with Sheahan's argument is that it can be accepted only after one assesses the strength and nature of Sheahan's security concerns as well as the amount and kind of similarity in the situations of hospital detainees and jail detainees. At the motion to dismiss stage, it is premature to make such factual assessments. See Homeyer v. Stanley Tulchin Assocs., Inc., 91 F.3d 959, 962-63 (7th Cir. 1996). If at the summary judgment stage, the evidence indicates that hospital detainees and jail detainees are not similarly situated with respect to the purposes of the challenged policies and that Sheahan's security or other concerns justify different treatment, then Sheahan will be entitled to a favorable ruling. But, at this stage, it is enough that May's allegations are recognizable as and consistent with an equal protection claim.

Sheahan further argues that, at the time in question, it was not clearly established that his treatment of hospital detainees would violate the

equal protection clause. However, Williams v. Lane makes clear that differences in treatment among inmates in different confinement situations will support an equal protection claim. 851 F.2d at 881. Sheahan complains that Williams involved prison inmates in segregation, not hospital detainees, but a perfect match with the facts of a prior case is not required to defeat a qualified immunity claim. Wilson, 526 U.S. at 614-15; Anderson, 483 U.S. at 640. It is enough that Williams establishes that inmates in different confinement situations are entitled to equal treatment absent a legitimate reason for different treatment. After Williams, the contours of the right May asserts were sufficiently clear that Sheahan should have understood that treating hospital detainees and jail detainees differently without a legitimate reason would be unconstitutional./3 Accordingly, the district court did not err in refusing to dismiss May's equal protection claim.

B.   Access to the Courts Claim

       In setting out his access to the courts claim, May alleged that Sheriff Sheahan's restrictive hospital detainee policies preclude him from appearing in court, impede his access to his attorney, and prevent him from assisting in his own defense. Those seeking to vindicate their rights in court enjoy a constitutional right of access to the courts that prohibits state actors from impeding one's efforts to pursue legal claims. Lewis v. Casey, 518 U.S. 343, 350-54 (1996); Bounds v. Smith, 430 U.S. 817, 821-23 (1977). To prove a violation of this right, a plaintiff must demonstrate that state action hindered his or her efforts to pursue a non-frivolous legal claim and that consequently the plaintiff suffered some actual concrete injury. Lewis, 518 U.S. at 350-54.

       Sheahan defends against this claim primarily by arguing that May failed to allege an actual injury and thus cannot state a claim. Admittedly, May's allegations in this regard are vague. But, his complaint can be read to allege that he has been detained longer than would otherwise be necessary if he could go to court. In relevant part, he alleged,

Plaintiff will not be taken to any scheduled court appearances thereby delaying the final disposition of his case; causing him to remain in custody for a longer period of time; preventing him from requesting a lowering of his bond as a result of his serious illness; delaying all other motions which require his personal attendance; and impeding his access to his attorney.

Under the generous standards applicable to a complaint reviewed on a motion to dismiss, this allegation is sufficient to state an access to the courts claim.

Sheahan further contends that, at the time in question, it was not clearly established that his alleged policies could violate a detainee's right of access to the courts. However, numerous precedents recognize a detainee's right of access to the courts, both as a general matter and with respect to legal assistance and participation in one's case. Bounds, 430 U.S. at 821-25; Procunier v. Martinez, 416 U.S. 396, 419 (1974) (limit on access to attorney), overruled in part on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); Penny v. Shansky, 884 F.2d 329, 330 (7th Cir. 1989) (limit on ability to appear in court); Johnson ex rel. Johnson v. Brelje, 701 F.2d 1201, 1207-08 (7th Cir. 1983) (limit on access to attorney); Harris v. Pate, 440 F.2d 315, 316-17 (7th Cir. 1971) (interference with ability to prepare defense). A policy both preventing detainees from going to court and limiting drastically their access to attorneys has obvious problems under these precedents. As such, it was clearly established, at the time in question, that Sheahan's alleged policies could violate a detainee's right of access to the courts./4 Accordingly, the district court did not err in denying Sheahan's motion to dismiss May's access to the courts claim.

C.  Substantive Due Process Claim

In support of his freedom from bodily restraint claim, May alleged that pursuant to Sheriff Sheahan's policy of shackling hospital detainees to their beds, he was shackled to his bed around the clock despite his weakened state and despite being watched by armed guards./5 The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee. Youngberg v. Romeo, 457 U.S. 307, 316 (1982); Bell v. Wolfish, 441 U.S. 520, 535-37 (1979); Murphy v. Walker, 51 F.3d 714, 717-18 (7th Cir. 1995). The use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve. Wolfish, 441 U.S. at 561.

Sheahan principally argues that his practice of shackling hospital detainees is rationally related to his legitimate security concerns. Certainly, shackling all hospital detainees reduces the risk of a breach of security and thus furthers a legitimate non-punitive government

purpose. But, it is hard to see how shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard, is an appropriate policy for carrying out this purpose. Such a policy is plainly excessive in the absence of any indication that the detainee poses some sort of security risk. Cf. Wolfish, 441 U.S. at 539 n.20 ("[L]oading a detainee with chains and shackles and throwing him in a dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in so many alternative and less harsh methods, would not support a conclusion that the purpose for which they were imposed was to punish."). Perhaps after some discovery Sheahan can produce evidence justifying both his shackling policy in general and his shackling of May in particular, but May's allegations are more than adequate to survive a motion to dismiss.

Sheahan also argues that, at the time in question, it was not clearly established that around the clock shackling of a hospital detainee would violate the Constitution. Sheahan's argument, however, relies on characterizing the relevant constitutional right in a way that essentially demands precedent involving an almost identical factual scenario. Such particularity is not required. Wilson, 526 U.S. at 614-15; Anderson, 483 U.S. at 640. It is enough that precedent establishes that pretrial detainees may not be shackled without a good penological or medical reason. See Murphy, 51 F.3d at 718. Accordingly, the district court did not err in refusing to dismiss May's freedom from bodily restraint claim.

IV

May's complaint adequately states a claim for each of the constitutional violations he alleges and the contours of each of the constitutional rights he asserts was clearly established at the time in question. Therefore, Sheriff Sheahan is not entitled to qualified immunity on the constitutional claims May asserts. Accordingly, we Affirm the district court's order denying Sheahan's motion to dismiss with respect to these claims.

/1 May's amended complaints have added new allegations and provided factual detail regarding his original allegations, in addition to identifying the unnamed defendants and joining additional plaintiffs.

/2 The scope of the divestiture of jurisdiction effected by a Forsyth appeal is limited, however. The district court has authority to proceed forward with portions of the case not related to the claims on appeal, such as claims against other defendants or claims against the public official that cannot be (or simply are not) appealed. Still, a district court might find it best to stay an entire case pending the resolution of a Forsyth appeal. See, e.g., Monfils v. Taylor, 165 F.3d 511, 518-19 (7th Cir. 1998).

/3 In an effort to establish that legal uncertainty does exist, Sheahan cites Rivera v. Sheahan, No. 97 C 2735, 1998 WL 531875, at *6 (N.D. Ill. Aug. 14, 1998), which rejected one detainee's somewhat similar equal protection claim. However, that decision was based on the sufficiency of the plaintiff's allegations, not any ruling on the legality of Sheahan's policies. Therefore, even if a single district court decision were sufficient to create legal uncertainty (and it is not, see generally Burgess v. Lowery, 201 F.3d 942, 944-46 (7th Cir. 2000)), the decision Sheahan relies on will not do.

/4 In arguing for the opposite conclusion, Sheahan again cites Rivera v. Sheahan, which rejected a somewhat similar access to the courts claim. 1998 WL 531875, at *6. But, for the same reasons articulated in supra note 3, Rivera does not create any legal uncertainty with respect to the contours of the right of access to the courts May asserts.

/5 As the district court recognized, May's complaint also suggests a claim that Sheahan's practice of shackling May to his bed amounted to deliberate indifference to a serious medical need (also a due process violation, see Zentmyer v. Kendall County, Ill., Nos. 99-1163, 99-1823, 2000 WL 760690, at *4 (7th Cir. June 13, 2000)), but May does not pursue this theory on appeal. May, however, does pursue on appeal allegations that the limitations Sheahan has placed on his phone, mail, and visitation rights violate due process, but these allegations are not in his complaint so we will not consider any claims that might be based on these allegations either.