Allen Tony DAVIS, Plaintiff,

v.

MILWAUKEE COUNTY and Robert B. Kliesmet, Defendants.

No. 00–C–0786.

United States District Court, E.D. Wisconsin.

Sept. 30, 2002.

Allen Tony Davis, pro se.

Mary Ellen Poulos, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Allen Tony Davis, a Wisconsin state prisoner currently incarcerated at the Supermax Correctional Institution, brings this pro se civil rights action under 42 U.S.C. § 1983, claiming that when he was a pre-trial detainee at the Milwaukee County Jail ("the jail") defendants Milwaukee County and its former sheriff, Robert Kliesmet, violated his constitutional right

of access to the courts. Defendants now move for summary judgment.

## I. FACTS

Plaintiff was detained at the jail between October 27, 1995 and November 26, 1996 having been charged with four counts of sexual assault of a child. During that time detainees at the jail had no access to legal materials of any kind.[1] Plaintiff asserts that the absence of legal materials hindered his efforts to defend himself in the sexual assault case and to pursue five civil cases in which he was the plaintiff.

The cases which form the basis for plaintiff's denial of access to the courts claim are as follows: (1) Milwaukee County Circuit Court Case No. F–941186, the criminal case on which he was detained and later convicted; (2) Seventh Circuit Court of Appeals Case No. 95–3555, an appeal of a § 1983 case brought by plaintiff against state corrections officials in the Eastern District of Wisconsin, which was dismissed by the court of appeals on December 19, 1995; (3) Wisconsin Court of Appeals Case No. 96–2468–W, in which plaintiff, while detained at the jail, unsuccessfully petitioned for a supervisory writ directing the jail to give him visitation rights; (4) Wisconsin Court of Appeals Case No. 96–2604–W, which also involved an unsuccessful petition by plaintiff for a supervisory writ regarding visitation rights at the jail; (5) Western District of Wisconsin Case No. 99–C–445, a § 1983 case brought by plaintiff in 1999 in which he alleged that he had been subjected to unlawful corporal punishment at the jail, and which was dismissed by the court sua sponte for failure to exhaust administrative remedies; and (6) Western District of Wisconsin Case No. 99–C–447, also a § 1983 case brought in 1999, in which plaintiff challenged a number of conditions of his confinement at the jail, and which was also dismissed sua sponte for failure to exhaust.[2]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "Material" facts are those facts that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over such facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Id.*

The movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the court concludes there is no genuine issue of material fact but that the law compels a judgment in favor of the non-movant, it may grant summary judgment in favor of the non-movant, even in the absence of a cross-motion for summary judgment, so long as the movant has been provided with an adequate opportunity to present its evidence and arguments. *See* 10A Charles A. Wright et al., *Federal Practice and Proce-*

1. The absence of legal materials at the jail apparently came to light as a result of the present case. The County has since installed a computer in a jail visiting room which provides detainees with access to Westlaw.

2. Additional facts will be set forth as necessary.

*dure* § 2720 (1998); *see also Kassbaum v. Steppenwolf Productions, Inc.*, 236 F.3d 487, 494 (9th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 41, 151 L.Ed.2d 13 (2001) ("It is generally recognized that a court has the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion."); *Goldstein v. Fidelity & Guar. Ins. Underwriters*, 86 F.3d 749, 750–51 (7th Cir.1996) (holding that grant of summary judgment to non-movant was proper where movant knew summary judgment was being considered, district court agreed there were no material factual disputes, but found that facts compelled judgment in favor of non-movant as a matter of law); *Int'l Union of Operating Eng'rs, Local 150, AFL–CIO v. Village of Orland Park*, 139 F.Supp.2d 950, 957 (N.D.Ill.2001) ("This judicial power furthers the policy goals of Federal Rule of Civil Procedure 56, in that it enables a court to promptly dispose of a case in which there are no genuine issues of material fact.").

## III. DISCUSSION

**A. Standard for Establishing** Liability on Claim of Denial of Access to the Courts

▮ It is well established that prisoners and pre-trial detainees have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). This right "requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828, 97 S.Ct. 1491.

▮ To establish a denial of his constitutional right an inmate must show that the jail had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also Alston v. DeBruyn*, 13 F.3d 1036, 1040–41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). Thus, even if the inmate can establish an "absolute deprivation of access to all legal materials," *Lewis*, 518 U.S. at 353 n. 4, 116 S.Ct. 2174, his claim will fail absent identification of some injury linked to the deprivation.

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* at 351, 116 S.Ct. 2174.

Moreover, the injury requirement is not satisfied by all types of frustrated legal claims.

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355, 116 S.Ct. 2174.

However, to establish injury an inmate need not show that if he had been provided

with adequate legal facilities he would have prevailed in a lawsuit. *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir.1998); *see also Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir.1999). Rather, he need only show that he was prevented "from litigating a non-frivolous case." *Walters*, 163 F.3d at 434.

The Seventh Circuit has not discussed in any detail the standard for determining non-frivolousness and at what stage in the underlying case it should be applied.[3] But *Walters* suggests that the determination should be made based on the pleadings in the frustrated case(s), applying a standard similar to that found in 28 U.S.C. § 1915A. *Id.* at 436 (analyzing the complaints in several of the underlying cases to determine whether "these suits were colorable rather than frivolous"). The application of such a standard eliminates the need for an extensive analysis of the merits of the underlying case, *see id.* at 434 (stating that trials within trials should be avoided when possible), and makes it less likely that a court will consider a merits-based determination in an underlying case in which prison officials hindered a plaintiff's legal efforts.[4]

Under § 1915A, the court must screen a prisoner's complaint against a governmental entity or officer to determine whether it is is frivolous, malicious, or fails to state a claim upon which relief may be granted. The court must take all well-pleaded allegations as true and, viewing them in the light most favorable to the plaintiff, dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir.2000).

This standard includes both a legal and a factual component. *Gladney v. Pendleton*, 302 F.3d 773, 775 (7th Cir.2002); *see also Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The legal component requires the court to determine whether, even if all of the allegations are true, there is some legal basis for the claim. If not, the case must be dismissed. *See Walters*, 163 F.3d at 436 (holding that underlying claim that prisoner wanted to see a doctor for a kidney problem was frivolous because, without more, such an allegation does not implicate the Eighth Amendment).

The factual component allows a suit to be dismissed if the facts are so delusional as to be inherently unbelievable. *Id.* "[N]o evidentiary hearing is required in a prisoner's case ... when the factual allegations are incredible." *Id.* at 774 (affirming dismissal where complaint alleged that unnamed guards at different prisons unlocked plaintiff's cell, allowing inmates to enter and drug and sexually assault him while he slept); *see also Lee v. Clinton*, 209 F.3d 1025, 1027 (7th Cir.2000) (affirming dismissal where plaintiff alleged that the United States and China conspired to

---

3. In most denial of access to courts claims, the underlying cases will have been dismissed for procedural reasons or on the pleadings or may have never been filed at all. In the present case all of the underlying cases but one were dismissed on procedural grounds. However, there may be occasions where the underlying case will have been dismissed on the merits.

4. Courts have long held that the result of a proceeding is fundamentally unreliable when there has been a breakdown in the adversarial process that our system counts on to produce just results. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *But cf. Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir.1998) (stating that rule of *Heck v. Humphrey* may bar damages for denial of access to the courts).

"bio-chemically and bio-technologically infect and invade" people with a mind reading and mental torture device).

## B. Application of Standard to Facts

Defendants concede that the legal facilities at the jail were deficient. The question, therefore, is whether the deficiency impeded plaintiff's ability to litigate a nonfrivolous claim. To answer this question I must evaluate each of the six cases that plaintiff claims were hindered.

### 1. Milwaukee County Circuit Court Case No. F–941186

■ This was the sexual assault case on which plaintiff was detained in the jail. Plaintiff cannot show that the jail's lack of legal materials hindered his defense because at all times during the case he had access to a court-appointed lawyer. Prison officials must provide inmates with either adequate access to law libraries or to persons trained in the law. *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491. But they "need not provide both." *DeMallory v. Cullen,* 855 F.2d 442, 446 (7th Cir.1988).

For a short time in the case plaintiff chose to represent himself (with the assistance of stand-by counsel), as was his right. *See Faretta v. California,* 422 U.S. 806, 816–17, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that criminal defendants have the right of self-representation). However, when a defendant "has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up." *United States v. Byrd,* 208 F.3d 592, 593 (7th Cir.2000); *see also United States ex rel. George v. Lane,* 718 F.2d 226, 231 (7th Cir.1983). Thus, plaintiff was not denied access to the courts in connection with the sexual assault case,[5] and defendants' motion for summary judgment insofar as it relates to this case will be granted.

### 2. Seventh Circuit Case No. 95–3555

■ This case involved the appeal of a dismissed § 1983 case plaintiff brought in the Eastern District of Wisconsin. Plaintiff claims that the appeal was rejected as untimely and non-compliant with the court's rules because the jail mishandled and refused to staple his papers. He also claims that he was unable to file a motion to recall the mandate due to the lack of law books at the jail. However, the record shows that plaintiff filed a timely appeal on October 23, 1995, *before* he was detained at the jail, which was later dismissed because he failed to file a docketing statement as required by Circuit Rule 3(c).[6] The court warned plaintiff that if he failed to file a docketing statement, the appeal would be dismissed, yet plaintiff failed to do so.[7] Further, the record indicates that plaintiff filed a motion to recall the mandate, which appears to have been denied because he still had not filed a docketing statement.

---

5. Because plaintiff has not shown that he was denied access to legal assistance I need not address the question of actual injury. Neither must I decide whether plaintiff's claim is barred by the rule of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *See Nance,* 147 F.3d at 591.

6. Rule 3(c) provides that an appellant must file a docketing statement with the clerk of the district court at the time of the filing of the notice of appeal or with the clerk of the court of appeals within seven days of the filing of the notice of appeal. Failure to file the statement within twenty-eight days is treated as an abandonment of the appeal. The clerk of the court of appeals reminds the litigants of these provisions when the appeal is docketed.

7. Because plaintiff filed this appeal before he was confined at the jail, the jail's lack of law books did not prevent him from learning of the requirements of Circuit Rule 3(c) at the time that he appealed.

In any event, plaintiff has failed to present any evidence tending to show that the lack of legal materials at the jail hindered his appeal; indeed, he does not address this claim at all in his summary judgment response brief. Therefore, defendants' motion for summary judgment insofar as it relates to this case will be granted.

### 3. Wisconsin Court of Appeals Case No. 96–2468–W

In this case plaintiff petitioned the Wisconsin Court of Appeals for a supervisory writ directing the sheriff to allow him visitation at the jail. The court dismissed the petition because plaintiff failed to show that he had a constitutional right to visitation and because it was unaware of the basis for the sheriff's decision to deny visitation.

A supervisory writ "is considered an extraordinary and drastic remedy that is to be issued only upon some grievous exigency." *Dressler v. Racine Co. Cir. Ct.,* 163 Wis.2d 622, 630, 472 N.W.2d 532 (Ct. App.1991). To obtain the writ a party must show (1) a clear legal right, (2) a positive and plain duty, (3) substantial damage based on non-performance of the duty, and (4) no other adequate remedy at law. *Law Enforc. Stds. Bd. v. Lyndon Station,* 101 Wis.2d 472, 493–94, 305 N.W.2d 89 (1981). Under this demanding standard, plaintiff cannot show that his petition was arguably meritorious.

First, there is no clear and unqualified constitutional right to jail visitation. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460–61, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Block v. Rutherford,* 468 U.S. 576, 588, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984); *see also Froehlich v. Wisconsin Dept. of Corrections,* 196 F.3d 800, 801–02 (7th Cir.1999); *Mayo v. Lane,* 867 F.2d 374, 375–76 (7th Cir.1989). Neither has plaintiff shown that he had a clear legal right to receive

visitors under state law. *See Thompson,* 490 U.S. at 462, 109 S.Ct. 1904.

Second, plaintiff presents no authority suggesting that defendants violated a positive and plain legal duty. Jail administrators possess substantial discretion in making decisions concerning visitation. *See Block,* 468 U.S. at 589, 104 S.Ct. 3227; *Bell v. Wolfish,* 441 U.S. 520, 540–41 n. 23, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Discretionary acts may not be reviewed by way of a supervisory writ. *Dressler,* 163 Wis.2d at 632, 472 N.W.2d 532.

Plaintiff argues that he was denied visitation as punishment and, citing *Bell* and *Zarnes v. Rhodes,* 64 F.3d 285 (7th Cir.1995), notes that pre-trial detainees have a right not to be punished. However, visitation may be denied to pre-trial detainees based on legitimate security concerns. *Block,* 468 U.S. at 588, 104 S.Ct. 3227. Such concerns are peculiarly within the province and professional expertise of corrections officials, and courts must ordinarily defer to their expert judgment. *Bell,* 441 U.S. at 540–41 n. 23, 99 S.Ct. 1861. Discretionary matters such as these are, by their very nature, inappropriate subjects of a supervisory writ.

In sum, because of the stringent requirements that must be met to obtain a supervisory writ and the considerable discretion afforded corrections officials in managing detention facilities, plaintiff lacked even an arguable entitlement to supervisory relief. Therefore, defendants' motion for summary judgment insofar as it relates to this case will be granted.

### 4. Wisconsin Court of Appeals Case No. 96–2604–W

This case also involved an application for a supervisory writ regarding plaintiff's visitation rights. The court of appeals denied the petition on the same grounds that it

denied his earlier petition. The result here must also be the same as with Case No. 96–2468, and defendants' summary judgment motion relating to this case will be granted.

### 5. Western District of Wisconsin Case No. 99–C–445–S

In this § 1983 case plaintiff claimed that he was subjected to unlawful corporal punishment at the jail by being placed in painfully tight full restraints in a hot cell. The court dismissed his complaint sua sponte for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA provides, in relevant part:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Under the PLRA, exhaustion of administrative remedies is a prerequisite to bringing a § 1983 action.

The event giving rise to plaintiff's claim occurred on August 10, 1996, approximately four months after the PLRA went into effect.[8] Plaintiff filed an inmate grievance over the incident but was told that it was not a grievable situation. In order to exhaust his administrative remedies, after his grievance was rejected, plaintiff had to ask the Grievance Committee for a hearing and, if its response was unsatisfactory, appeal to the jail administrator. It is undisputed that he did not do so. However, it is also undisputed that the jail provided plaintiff with no information about the PLRA and its exhaustion requirement or about the jail's the grievance procedure.

When the court dismissed plaintiff's § 1983 case for failure to exhaust it did so without prejudice. However, the practical effect of the dismissal was to bar reinstatement. This is so because plaintiff filed the suit after he left the jail and, as a non-inmate, was no longer permitted by jail rules to use the grievance procedure. Thus, plaintiff could no longer exhaust and the dismissal was therefore, in effect, with prejudice. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir.2002).

Based on the foregoing facts, three questions are presented. (1) Can interference with a plaintiff's ability to exhaust administrative remedies give rise to a claim of denial of access to the courts? (2) If so, did the absence of legal materials at the jail hinder plaintiff from exhausting? (3) If so, was plaintiff's claim non-frivolous? I answer all three questions in the affirmative.

### a. Interference With a Plaintiff's Ability to Exhaust May Give Rise to a Claim of Denial of Access to the Courts

"Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.2000); *see also Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995) (holding that prisoners' constitutional right of access to the courts "extends to established prison grievance procedures"). Because exhaustion under the PLRA is a prerequisite to the filing of a § 1983 action concerning prison conditions, if prison officials prevent an inmate from exhausting they impede his access to the courts just

8. The effective date of the PLRA was April 26, 2002. *Lewis v. Washington*, 300 F.3d 829, 832 (7th Cir.2002).

as surely as if they prevent him from later filing his complaint. *See Moss v. Mormon*, No. 99–C–3571, 2000 WL 283967, 2000 U.S. Dist. LEXIS 3232, at *8 n. 1 (N.D.Ill. Mar. 10, 2000) ("Now that exhaustion is a prerequisite to suit, a prisoner could claim that interference with the grievance procedure amounted to interference with his access to the courts.").

### b. Defendants Interfered With Plaintiff's Ability to Exhaust

■ The record establishes that defendants interfered with plaintiff's ability to exhaust in three ways. First and most importantly, because of the absence of any legal materials at the jail, plaintiff was unable to learn about the newly enacted PLRA and its requirement that he exhaust. It is undisputed that he did not learn of the law until after he had been transferred out of the jail, when it was too late to exhaust. His case was then dismissed for failure to comply with the PLRA's exhaustion requirement. *See Lewis*, 518 U.S. at 351, 116 S.Ct. 2174 ("He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known."). Based on this fact alone I find that plaintiff's access to the courts was impeded.

Second, even if plaintiff had known about the PLRA, the absence of materials at the jail about the grievance procedure itself would have prevented him from knowing how to fully exhaust. *See Hall v. Sheahan*, No.2000–C–1649, 2001 WL 111019, at *12 (N.D.Ill. Feb.2, 2001) ("An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it. A grievance procedure that is not made known to inmates is not an 'available' administrative remedy.").

Third, when defendants rejected plaintiff's grievance they advised him that it was "not a grievable situation," causing him not to pursue the matter further. *See Moss*, 2000 WL 283967, at *2, 2000 U.S. Dist. LEXIS 3232, at *18–19 (holding that because prison officials told plaintiff-prisoner that he could not file a grievance administrative remedies were not "available" to him, excusing his noncompliance with the PLRA); *see also Lewis*, 300 F.3d at 833 (holding that if prison officials refuse to respond to an inmate's grievances administrative remedies become "unavailable" to him).

Thus, the undisputed facts show that defendants hindered plaintiff from exhausting and, therefore, from complying with the PLRA. This, in turn, led to the dismissal of his suit.

### c. Non–Frivolous Claim

■ In order to prevail on his denial of access to the courts claim, plaintiff must also show that this § 1983 action was non-frivolous. Plaintiff alleged that he was subjected to "corporal punishment" by being placed in painful physical restraints in a hot cell in retaliation for a complaint he had recently filed against a guard, and that he was provided with no medical attention during the ordeal. He averred that restraints were not needed to protect himself or others.

These allegations are not incredible and, liberally construed, state a possible violation of the Constitution.

The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee. *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Bell v. Wolfish*, 441 U.S. 520, 535–37, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Murphy v. Walker*, 51 F.3d 714, 717–18 (7th Cir.

1995). The use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve. *Wolfish,* 441 U.S. at 561, 99 S.Ct. 1861.

*May v. Sheahan,* 226 F.3d 876, 884 (7th Cir.2000); *see also Zimmerman,* 226 F.3d at 573 (reversing § 1915A dismissal where plaintiff had pled an adequate retaliation claim, and noting that even "otherwise permissible conduct can become impermissible when done for retaliatory reasons"); *DeWalt,* 224 F.3d at 618 (stating that "a prison official may not retaliate against a prisoner because that prisoner filed a grievance").

If they had been ordered to answer, defendants would surely have offered a lawful explanation for their actions. However, under the standard set forth above, plaintiff stated a non-frivolous claim.

Plaintiff, therefore, has shown that he was denied access to the courts in connection with this § 1983 claim. Defendants concede that legal materials at the jail were non-existent. Defendants, further, do not dispute that plaintiff was given no information about the PLRA or the grievance procedure and that he was told that his complaint was not grievable. Defendants' failures clearly prevented plaintiff from exhausting and led to the dismissal of the case. No reasonable fact-finder could find otherwise. Finally, plaintiff's claim was arguably meritorious. Thus, the record establishes actual injury. *See Lewis,* 518 U.S. at 353 n. 3, 116 S.Ct. 2174 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought and sold."). Defendants have had a full opportunity to present evidence and arguments on this point. Therefore, defendants' motion will be denied and partial summary judgment will be granted to plaintiff on the issue of liability on his access to courts claim insofar as it arises out of Western District Case No. 99–C– 445.

**6. Western District Case No. 99–C– 447–S**

This § 1983 case, in which plaintiff alleged numerous constitutional deprivations at the jail, was also dismissed sua sponte for failure to exhaust administrative remedies. Defendants hindered plaintiff's efforts to pursue this claim for the same reasons that they hindered his efforts in Case No. 99–C–445. Plaintiff had no access to information about the PLRA's exhaustion requirement or the jail's grievance procedure. Thus, he was prevented from timely exhausting. No reasonable fact-finder could conclude that plaintiff was not hindered in pursuing this case by the absence of legal materials at the jail. Therefore, I turn to the question of whether any of the claims in the case were non-frivolous.

Plaintiff's first claim was that he was denied access to the courts by being prevented from litigating Cases F–941186, 95– 3555, 96–2468–W, and 96–2604–W, which I discussed above. I have already determined that those cases lacked arguable merit, therefore, plaintiff was not injured by his inability to litigate this claim.

Plaintiff's second claim was that he was denied due process when he was placed in Pod 4D of the jail, a "punitive" pod. He claimed that he was allowed out of his cell on Pod 4D less than the minimum of fourteen hours per day required by Wis. Admin. Code § DOC 350.07(4). He argued that this rule created a liberty interest, thus triggering a right to due process. However, in *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d

418 (1995), the Supreme Court held that liberty interests under the Due Process Clause are not created by such state prison regulations.[9] *See Rapier v. Harris,* 172 F.3d 999, 1005 (7th Cir.1999) (holding that *Sandin* precluded a pretrial detainee from relying on a state regulation to establish a liberty interest). Therefore, insofar as plaintiff's claim was based on § DOC 350.07(4), it was without merit.

■■■ However, plaintiff also claimed that he was placed on Pod 4D solely as punishment. Plaintiff asserted that detainees on Pod 4D were deprived of various rights and privileges, including visitation, telephone usage, out of cell time, use of the canteen, and other amenities that were afforded to those housed in other parts of the jail. These allegations are not inherently unbelievable.

Further, pre-trial detainees have a constitutional right not to be punished. The Seventh Circuit has stated that:

> a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose. *See Bell,* 441 U.S. at 538, 99 S.Ct. 1861. Additionally, a restriction or condition may "amount to punishment" if prison officials are "deliberately indifferent" to a substantial risk to the detainee's safety. *See Zarnes v. Rhodes,* 64 F.3d 285, 290 (7th Cir.1995) (holding that inmate's allegation that prison guards had shown deliberate or reckless disregard for her safety by placing her in a cell with a

dangerous inmate was sufficient to state a claim under the Due Process Clause). *Id.*

Had the court ordered defendants to respond to plaintiff's charges, no doubt they would have offered a valid reason for defendant's placement and loss of privileges. Additionally, some of the deprivations of which plaintiff complained may not have implicated the Constitution, *see, e.g., Higgason v. Farley,* 83 F.3d 807, 809 (7th Cir.1996) (housing plaintiff in cellblock where he experienced frequent lockdowns, restricted access to law library, denial of educational opportunities, and loss of social and rehabilitative activities did not impose atypical and significant hardships); *Williams v. Ramos,* 71 F.3d 1246, 1248–49 (7th Cir.1995) (holding that segregation unit in which plaintiff was generally locked in cell 24 hours per day, was handcuffed if permitted to leave, and precluded from activities available to other inmates did not violate Constitution); *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994) (finding that confining prisoners to cells twenty-three hours per day did not violate the Eighth Amendment absent other aggravating conditions); *Smith v. Shettle,* 946 F.2d 1250, 1252 (7th Cir.1991) (holding that "a prisoner has no natural liberty to mingle with the general prison population"). Nevertheless, plaintiff's claim that as a pretrial detainee he should not have been placed on a punitive pod without due process and/or solely as punishment was non-frivolous. I cannot conclude otherwise on the state of the record. *Cf. Higgs v. Carver,* 286 F.3d 437 (7th Cir.2002) (reversing and remanding where record did not show whether pretrial detainee was placed in

---

9. In so holding, the Court overruled *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in which the Court had held that liberty interests may be created by state regulations containing mandatory language. Instead, the Court held that the proper inquiry was whether the challenged practice "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293.

segregation for preventive purposes or as punishment); *see also Sanders v. Sheahan,* 198 F.3d 626, 629 (7th Cir.1999).

■ Plaintiff also alleged that as part of his "punishment" he was denied access to periodicals. " '[T]he arbitrary denial of access to published materials violates an inmate's first amendment rights,' as well as a pre-trial detainee's right not to be punished under the Due Process Clause." *Antonelli v. Sheahan,* 81 F.3d 1422, 1433 (7th Cir.1996) (citations omitted) (quoting *Martin v. Tyson,* 845 F.2d 1451, 1454 (7th Cir.1988)). This claim too was non-frivolous.

■ Plaintiff's third claim was that he was disciplined on thirteen occasions without due process of law. He claimed that defendants' actions violated Wis. Admin. Code § DOC 350.15(2), but, as I have stated, such state regulations do not create a liberty interest protected by the Due Process Clause. Nevertheless, while disciplinary measures may be taken against pretrial detainees who engage in misconduct, some sort of procedural protection must be provided. *Rapier,* 172 F.3d at 1005. Plaintiff alleged that he was not afforded due process, thus, this claim too was arguably meritorious.

■ Fourth, plaintiff claimed that defendants rejected his mail without notifying him. In *Procunier v. Martinez,* 416 U.S. 396, 417–18, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Court held:

> that the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards. The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a "liberty" interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment. As such, it is protected from arbitrary governmental

invasion. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The District Court required that an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence. These requirements do not appear to be unduly burdensome, nor do appellants so contend. Accordingly, we affirm the judgment of the District Court with respect to the Department's regulations relating to prisoner mail.

While *Procunier* was partially overruled in *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the Court has never repudiated its holding that restrictions on prisoner mail must be accompanied by procedural protections. *Miniken v. Walter,* 978 F.Supp. 1356, 1363 (E.D.Wash.1997) (holding that prison officials violated inmate's due process rights when they failed to notify him or the publisher of the rejection of his copy of Prison Legal News). Therefore, this claim was also non-frivolous. *See Antonelli,* 81 F.3d at 1432 (reversing dismissal of inmate's claim of obstruction of mail because court could not on the pleadings determine "whether the defendants may be able to justify the delays and openings of outgoing mail").

■ Fifth, plaintiff claimed that he had to pay too much for postage on his letters because the jail had no meter mail service to weigh them. Plaintiff does not explain how this denied him any constitutional right, instead complaining that it increased his costs. This claim was frivolous. *See Van Poyck v. Singletary,* 106 F.3d 1558,

1559–60 (11th Cir.1997) (holding that the First Amendment does not require prison officials to provide indigent prisoners with unlimited free postage for non-legal mail); *Bach v. Coughlin,* 508 F.2d 303, 307 (7th Cir.1974) (same).

 Sixth, plaintiff alleged that pre-trial detainees such as himself were treated worse than convicted prisoners in a number of ways as, for example, by being given less time outside their cells. The Equal Protection Clause forbids a state from arbitrarily treating one group of prisoners worse than another. *See Anderson v. Romero,* 72 F.3d 518, 526 (7th Cir.1995); *see also May,* 226 F.3d at 882. Prison officials may differentiate based on legitimate penological concerns, *see French v. Owens,* 777 F.2d 1250, 1256 (7th Cir. 1985), such as security, *see Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir.1991), and are accorded substantial deference in such matters, *Bell,* 441 U.S. at 547, 99 S.Ct. 1861. However, without knowing what concerns defendants may have had in this instance, I cannot conclude that equal protection was not violated. *See May,* 226 F.3d at 882 (affirming denial of motion to dismiss where court could not determine reason for disparate treatment of pre-trial detainees without a record). This claim was non-frivolous.

Thus, because some of the claims in Case No. 99–C–447 were non-frivolous, plaintiff has shown that he was denied access to the courts. Defendants have had a full opportunity to present evidence and arguments. Therefore, plaintiff will receive partial summary judgment on the issue of liability only.

In sum, defendants are entitled to summary judgment in connection with Cases F–941186, 95–3555, 96–2468–W, and 96–2604–W. With respect to Case No. 99–C–445, plaintiff will receive partial summary judgment on the issue of liability only. The same is true with respect to the sec-ond, third, fourth, and sixth claims in Case No. 99–C–447. Summary judgment will be granted to defendants on the first and fifth claims in Case No. 99–C–447.

## C. Damages for Denial of Access to the Courts

 Having proven a deprivation of his constitutional rights, plaintiff is entitled to nominal damages. *See Sahagian v. Dickey,* 827 F.2d 90, 100 (7th Cir.1987) (holding that award of nominal damages was appropriate when plaintiff's access to the courts was denied). Nominal damages are the appropriate means of vindicating rights whose deprivation has not been shown to have caused actual damages. *Id.; see also Redding v. Fairman,* 717 F.2d 1105, 1119 (7th Cir.1983) ("Nominal damages are not compensation for loss or injury, but rather recognition of a violation of rights."). Accordingly, plaintiff will be awarded nominal damages in the amount of $1 for each of the two cases in which his efforts were hindered. *See Sahagian,* 827 F.2d at 100.

Plaintiff has requested compensatory damages. However, in order to obtain them he must establish the extent and not merely the fact of his injury. *See, e.g., Ustrak v. Fairman,* 781 F.2d 573, 579 (7th Cir.1986) ("[D]amages, like every other contested element of a plaintiff's case, must be proved in order to be recovered; a plaintiff who wants substantial damages can't just ask for them."). Ordinarily, "if only the fact and not the extent of injury is proved only nominal damages may be awarded." *Id.* at 578 (citing *Carey v. Piphus,* 435 U.S. 247, 264–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). In some instances, " 'general damages' " may be recoverable without proof of specific loss, as where the loss of a constitutional right is "impossible to monetize." *Id.* at 579. However, in the present case, the loss of the right may be measured more precisely—by the

value of the underlying cases plaintiff lost. Thus, to obtain compensatory damages plaintiff must prove that he would have won or settled these cases for a certain amount.[10]

■ Plaintiff also seeks punitive damages. Punitive damages may be available, even absent actual loss, if there is a showing of aggravating circumstances or malicious intent, *Endicott v. Huddleston*, 644 F.2d 1208, 1217 (7th Cir.1980), or " 'callous indifference to the plaintiff's rights.' " *Sahagian*, 827 F.2d at 100 (quoting *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir.1986)).

■ I cannot determine whether plaintiff would have won his cases and, if so, their value, on the present record. Neither can I determine whether defendants' conduct was such that punitive damages are warranted. Defendants must be given the opportunity to present evidence concerning their actions in the underlying cases and concerning the absence of legal materials at the jail.

## IV. ADDITIONAL MOTIONS

Plaintiff styled his summary judgment response as a motion to dismiss defendants' motion. I have treated it as a response brief, thus his motion to dismiss will be denied as moot. Plaintiff also filed a motion requesting that I not accept defendants' motion until he was provided with certain exhibits. It appears that he has received such exhibits, and his submissions reveal that he has been able to respond. Therefore, his motion will be denied as moot. Finally, plaintiff filed a motion to exceed the page limitation on his response brief. Civil Local Rule 7.1(f) limits such briefs to thirty pages. Plaintiff

asks that I accept his fifty-five page brief because of the number of issues involved and because it is hand-written. Plaintiff's motion will be granted.

Defendants filed a motion to file a reply brief instanter. Plaintiff opposed the motion but did not identify any prejudice from the filing. The motion will be granted and the brief accepted.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Docket # 79) is **GRANTED IN PART AND DENIED IN PART,** and that partial summary judgment is **GRANTED** to plaintiff, as described herein.

**IT IS FURTHER ORDERED** that plaintiff's motion requesting that defendants' motion for summary judgment not be accepted (Docket # 85) and plaintiff's motion to dismiss (Docket # 91) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to exceed page limits on briefs (Docket # 92) and defendants' motion to file a reply brief instanter (Docket # 93) are **GRANTED.**

**IT IS FURTHER ORDERED** that a telephone conference is set for October 18, 2002 at 11:30 a.m., at which time further scheduling of this case will take place.

---

10. In *Walters*, the court indicated that trying "a case within a case" should be avoided where possible. 163 F.3d at 434. However, the issue in *Walters* was injury for "the threshold issue of standing." *Id.; see also Hoard*, 175 F.3d at 534 (stating that plaintiff need not show validity of claim as a "precondition to obtaining damages"). Here, plaintiff has established injury for purposes of standing. The question now is whether he can establish the extent of his injury for purposes of being compensated.