Jerry **MONTGOMERY**, Petitioner–
Appellant,

v.

Rondle **ANDERSON**, Respondent–
Appellee.

No. 00–3134.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 1, 2001.

Decided Dec. 4, 2001.

Before MANION, ROVNER, and EVANS, Circuit Judges.

### ORDER

After prisoner Jerry Montgomery's fourth disciplinary infraction in twelve months, an Indiana prison disciplinary board convicted him of being a habitual rule violator. Montgomery moved under 28 U.S.C. § 2254 to vacate this conviction, alleging that, because of a change in the prison disciplinary rules that took effect while his administrative appeals were pending, he no longer qualified as a habitual offender. The district court denied relief, and Montgomery appealed. We appointed counsel to assist Montgomery and asked the parties to brief the effect of the new rule on Montgomery's case. Instead, Montgomery's lawyer asked to withdraw because he believes that basing an appeal on the rule change would be frivolous. In turn, we ordered additional briefing, now complete, as to "whether Montgomery's disciplinary conviction under the former definition of 'habitual conduct rule violator' would violate the Constitution if the Indiana Department of Corrections has a policy of retroactively applying ameliorative changes in the disciplinary code to pending cases." During briefing on this issue, Montgomery sent his appointed counsel a threatening letter complaining of his attempt to withdraw. We grant counsel's request to withdraw, vacate the denial of Montgomery's § 2254 motion, and remand the case for further proceedings.

### I.

In November 1999 a prison disciplinary board convicted Montgomery of refusing to obey a direct order, his fourth violation within twelve months of the Indiana Department of Corrections' Adult Disciplinary Policy ("ADP").[1] Because of his earlier offenses, the board also convicted Montgomery under a habitual offender provision of the ADP, which makes it a separate disciplinary offense for prisoners to incur four or more rule violations within a twelve-month period. The board revoked 90 days' good-time credit.

While Montgomery's administrative appeal was pending before the IDOC's final reviewing authority, the habitual offender provision was changed to require four rule violations within *six* months instead of twelve. Based on the timing of his prior convictions, Montgomery would not have qualified as a habitual offender under the amended rule. Montgomery supplemented his appeal before the final reviewing authority, requesting that he be given the benefit of this new definition. His appeal was denied.

Montgomery then filed his § 2254 petition, challenging his conviction on several grounds, including the state's failure to give him the benefit of the amended rule. Neither the state nor the district court addressed Montgomery's rule-change argument. Instead, both focused on the conclusion that "some evidence" supported the board's finding that Montgomery was a habitual offender under the rule in effect at the time of his disciplinary hearing. Montgomery filed a timely notice of appeal.

In its first brief, the state makes the unhelpful argument that Montgomery's claim should fail because he did not produce evidence of the rule change. Because the rule indeed changed in January 2000–as surely counsel for the state knew-we

---

1. Montgomery was found guilty of being in an unauthorized area in June 1999; threatening another with bodily harm or with an offense against person or property in February 1999; and insolence, vulgarity, or profanity in December 1998.

ordered additional briefing. Our hope was that the state would inform us of the IDOC's general policy for applying disciplinary rule changes that take effect while an administrative appeal is pending. But even after we clarified the issue to be briefed and granted the state's request for an additional month to address our concern, the state has yet to provide relevant information necessary for us to determine whether the IDOC ever applies disciplinary rule changes retroactively or, indeed, whether it has applied *this* amended rule retroactively to other prisoners. In its latest brief, the state simply describes Indiana's policy in regards to changes in the criminal law that occur during an ongoing prosecution; this does not, however, explain how Indiana *prison officials* choose to deal with such changes in the ADP in the course of prison disciplinary proceedings.

## II.

Prison officials have several options for implementing disciplinary rule changes. IDOC might decide to apply rule changes prospectively if it deems such rules procedural, *see Crawford v. Indiana*, 669 N.E.2d 141, 150 (Ind.1996), or because officials wish to parallel application of the Indiana savings statute, *see* Ind.Code § 1–1–5–1 ("the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute...."). Conversely, IDOC might apply substantive rule changes retroactively under a parallel to Indiana's doctrine of amelioration, whereby a defendant is given the benefit of a more lenient sentencing statute that takes effect after commission of the crime but before sentencing. *See State v. Hammond*, 737 N.E.2d 425, 428 (Ind.Ct.App. 2000). Or IDOC might use some other legitimate criteria in deciding when, if ever, it will apply a rule change retroactively.

■ We offer no opinion as to the wisdom of one policy over another, and indeed nothing in the Constitution requires rule changes to be applied retroactively. As Montgomery and his counsel both note, however, the Constitution may be violated if Indiana prison officials applied the amended habitual offender rule to other similarly situated prisoners but refused to do so in Montgomery's case. We give prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), but in the prison context, equal protection requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir.2000).

■ The state appears to take the position in its briefs that, no matter what IDOC's usual policy, and no matter how it applied the amended habitual offender rule to other similarly situated prisoners, the department was not required to apply the revised rule to Montgomery. This is simply incorrect. If Indiana prison officials gave all other prisoners the benefit of the new habitual offender rule, they could not single out Montgomery for different treatment absent some legitimate penal interest in doing so. *See May*, 226 F.3d at 882. Prison officials could not, for example, decide to withhold the benefit of the new rule for some improper reason, such as Montgomery's race. *See Crawford v. Indiana Dep't of Corr.*, 115 F.3d 481, 486 (7th Cir. 1997) ("[T]here is no general right of prison officials to discriminate against prisoners on grounds of race, sex, religion, and so forth."). Nor could prison officials single Montgomery out for negative treat-

ment based solely on a vindictive desire to "get" him. *See Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir.1998), *aff'd*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

█ We will not presume that IDOC acted improperly, but it was error to dismiss Montgomery's petition without even requiring the state to fully answer his allegations. Given the lack of factual development in the record, we are unable to conclusively say that Montgomery does not have a meritorious equal protection claim. We therefore remand the case for further proceedings on this claim. On remand, if the state can show that IDOC applied the same policy in Montgomery's case that it has been applying to all other similarly situated prisoners, the district court should enter judgment in the state's favor. But if there have been differences in treatment, the court must explore the extent and reasons for them.

The only remaining matter is appointed counsel's renewed request to withdraw. Although we disagree with counsel's assessment of the merits of Montgomery's appeal, we nonetheless think it appropriate to permit him to withdraw. Counsel filed with this court a copy of a letter in which Montgomery complains about counsel's work on the appeal and warns, "I'll guarantee you will regret it if you don't correct yourself." Counsel reasonably views this statement as a threat, and it therefore seems unlikely that he and Montgomery could maintain an effective attorney-client relationship. Further, unlike criminal defendants, "[p]arties in civil cases have no equivalent right to counsel at the expense of another-whether of the public or of an unwilling lawyer." *A Sealed Case*, 890 F.2d 15, 18 (7th Cir.1989); *see also Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir.1995) (no right to counsel in civil cases). We leave to the district court to decide whether, in light of Montgomery's conduct, new

counsel should be appointed. *See Otis v. City of Chicago*, 29 F.3d 1159, 1169 (7th Cir.1994) (district court did not abuse discretion in refusing to appoint second lawyer where plaintiff was uncooperative with first lawyer).

Accordingly, counsel's motion to withdraw is GRANTED, the judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this order.