Jerry MONTGOMERY, Petitioner–Appellant,

v.

Cecil DAVIS, Respondent–Appellee.

No. 02–3304.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 12, 2003.*

Decided Aug. 12, 2003.

Rehearing Denied Sept. 18, 2003.

* After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the appellant's brief and the record. *See* Fed. R.App. P. 34(a).

Before MANION, ROVNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

This case, involving Jerry Montgomery's challenge to a prison disciplinary sanction, reaches us a second time. A prison disciplinary board convicted Montgomery of being a habitual violator of prison rules and revoked 90 days' good-time credits. Montgomery petitioned under 28 U.S.C. § 2254 to vacate his conviction, alleging that, because of a change in the prison disciplinary rules that took effect while his administrative appeal was pending, he no longer qualified as a habitual offender. The district court denied relief, and Montgomery appealed. We remanded for the district court to consider whether, in refusing to give Montgomery the benefit of the amended rule, the Indiana Department of Corrections ("IDOC") had violated Montgomery's equal protection rights. On remand, the district court again denied relief, and Montgomery appeals. We affirm.

### I.

In November 1999 a prison disciplinary board convicted Montgomery of refusing to obey a direct order, his fourth disciplinary violation within twelve months.[2] Because of his prior violations, Montgomery was also convicted of being a habitual violator of prison rules. At the time of Montgomery's disciplinary hearing, the IDOC Adult Disciplinary Policy provided that a prisoner who committed four or more disciplinary sanctions within a 12–month period was guilty of being a "habitual offender" of prison rules. While Montgomery's administrative appeal was pending before the IDOC's final reviewing authority, the habitual offender provision was changed to require four rule violations within *six* months. Based on the timing of his prior convictions, Montgomery would not qualify

---

2. Montgomery was convicted of being in an unauthorized area in June 1999; threatening another with bodily harm in February 1999; and insolence, vulgarity, or profanity in December 1998.

as a habitual offender under the amended rule. Montgomery brought the rule change to the attention of the final reviewing authority and requested that he be given the benefit of this new definition. His appeal was denied.

Montgomery then filed a § 2254 petition, challenging his disciplinary conviction on several grounds, including that the state's refusal to give him the benefit of the amended rule violated his equal protection rights. Neither the state nor the district court addressed Montgomery's rule-change argument. Instead, both focused on the conclusion that "some evidence" supported the board's finding that Montgomery was a habitual offender under the rule in effect at the time of his disciplinary hearing. Montgomery appealed. Before this court, the state initially made the unhelpful argument that Montgomery had failed to produce sufficient evidence of the rule change. *See Montgomery v. Anderson,* 27 Fed.Appx. 661, 662 (7th Cir.2001) (unpublished). Because the habitual offender rule had indeed changed in January 2000, we ordered additional briefing. Our hope was that the state would explain the IDOC's general policy for applying disciplinary rule changes that take effect while an administrative appeal is pending. But even after we clarified the issue to be briefed, the state failed to provide information necessary for us to determine whether the IDOC had applied the amended rule retroactively to other prisoners but not to Montgomery. *Id.*

In our order remanding the case, we noted that prison officials had several options for implementing disciplinary rule changes and offered no opinion as to the wisdom of any particular policy. As we observed, "nothing in the Constitution requires rule changes to be applied retroactively." *Id.* at 662. What concerned us, however, was whether Indiana prison officials had uniformly applied the amended rule. We noted, for example, that prison officials could not give similarly situated prisoners the benefit of the amended rule but refuse to do so in Montgomery's case without resting the distinction on some legitimate penal interest. *See May v. Sheahan,* 226 F.3d 876, 882 (7th Cir.2000). Nor could officials refuse to give Montgomery the benefit of the amended rule for some improper reason, such as his race. *See Crawford v. Indiana Dep't of Corr.,* 115 F.3d 481, 486 (7th Cir.1997).

We did not presume that the IDOC had acted improperly, but concluded that it was error for the district court to dismiss Montgomery's petition without requiring the state to fully answer his allegations. We therefore remanded the case for further proceedings on Montgomery's equal protection claim with the following instruction: "On remand, if the state can show that the IDOC applied the same policy in Montgomery's case that it has been applying to all other similarly situated prisoners, the district court should enter judgment in the state's favor. But if there have been differences in treatment, the court must explore the extent and reasons for them." *Montgomery,* 2001 WL 1563918, at 662.

On remand, the district court appointed counsel to represent Montgomery.[3] After the parties conducted discovery, the court held an evidentiary hearing to consider how the state had applied the amended habitual offender rule. The state presented the testimony of one witness, IDOC final reviewing authority Charles Penfold,

---

**3.** In our prior order, we granted Montgomery's appointed appellate counsel leave to withdraw because of Montgomery's threatening conduct toward him. We left to the district court whether to appoint new counsel on remand. *Montgomery,* at 663.

along with nine pieces of documentary evidence, showing that it had not applied the rule change retroactively to *any* prisoner. Based on the evidence submitted, the district court concluded that the IDOC had treated Montgomery no differently than other prisoners and denied his petition. Montgomery, now pro se, appeals the judgment of the district court.

## II.

Montgomery's pro se brief is convoluted, but we read the brief to raise essentially two arguments. First, Montgomery argues that the state was required to retroactively apply the amended habitual offender rule in his case. Second, he argues that his court-appointed attorney provided ineffective assistance. He asks us to reverse the judgment of the district court and expunge his habitual offender conviction, as well as the four predicate offenses that triggered the conviction. We reject his arguments.

■ Montgomery's first argument, that the state was required to-apply the rule change retroactively, is based on his reading of Indiana's Administrative Orders and Procedures Act. *See* Ind.Code § 4–21.5–1 *et seq.* Montgomery did not raise this argument below, nor could he properly have raised it, since the issue exceeds the scope of our remand. *See Pearson v. Edgar,* 153 F.3d 397, 405 (7th Cir.1998) ("When a remand is limited to a specific purpose, the district court may not venture into other areas."); *United States v. Polland,* 56 F.3d 776, 777 (7th Cir.1995) (on remand, district court may not decide issues beyond the scope of appellate court's mandate). We remanded for the district court to consider a specific issue, namely, whether the IDOC had uniformly applied

the amended habitual offender rule and, if not, the reasons for any discrepancies. In our order we specifically held, contrary to Montgomery's assertion, that federal law did *not* require the IDOC to adopt any particular policy for implementing the rule change. *Montgomery,* at 662. We decline to revisit the issue. But we note that even if we were to consider the argument, Montgomery's citation to the Indiana Administrative Orders and Procedures Act-which applies to state court review of certain agency decisions-is of no avail, because Indiana does not provide for judicial review of prison disciplinary board determinations. *See Pannell v. McBride,* 306 F.3d 499, 502 (7th Cir.2002); *White v. Ind. Parole Bd.,* 266 F.3d 759, 766 (7th Cir. 2001).

■ Montgomery next argues that his court-appointed attorney provided ineffective assistance during the district court proceedings. The basis for his argument appears to be twofold: first, that the attorney failed to argue that prison officials were required to apply the rule change retroactively; and, second, that he failed to attack the predicate offenses that triggered Montgomery's habitual offender conviction. Because this is a civil proceeding, Montgomery had no right to counsel and, therefore, no right to effective assistance of counsel. *See Stroe v. INS,* 256 F.3d 498, 500 (7th Cir.2001); *see also A Sealed Case,* 890 F.2d 15, 18 (7th Cir.1989) (Unlike criminal defendants, "[p]arties in civil cases have no equivalent right to counsel at the expense of another--whether of the public or of an unwilling lawyer."). Further, that Montgomery's appointed counsel declined to raise these issues could not be viewed as a failing on his part, because both issues were beyond the scope of our remand.[4]

---

**4.** Montgomery's apparent attempt to relitigate the issues surrounding a prior disciplinary

conviction for stalking, aside from being beyond the scope of the issues on appeal, could

735

For these reasons, the judgment of the district court is AFFIRMED.

constitute an unauthorized successive habeas corpus petition, as this court already rejected Montgomery's challenge to that conviction in an earlier petition. *See Montgomery v. Anderson,* 262 F.3d 641 (7th Cir.2001).

