Justice Stevens,
with whom Justice Ginsburg joins,
concurring.
The Court holds that Title II of the Americans with Disabilities Act of 1990 validly abrogates state sovereign immunity at least insofar as it creates a private cause of action for damages against States for conduct that violates the Constitution. Ante, at 159. And the state defendants have correctly chosen not to challenge the Eleventh Circuit’s holding that Title II is constitutional insofar as it authorizes prospective injunctive relief against the State. See Brief for Respondents 6; see also Miller v. King, 384 F. 3d 1248, 1264 (CA11 2004). Rather than attempting to define the outer limits of Title II’s valid abrogation of state sovereign immunity on the basis of the present record, the Court’s opinion wisely permits the parties, guided by Tennessee v. Lane, 541 U. S. 509 (2004), to create a factual record that will inform that decision.* I therefore join the opinion.
It is important to emphasize that although petitioner Goodman’s Eighth Amendment claims provide a sufficient basis for reversal, our opinion does not suggest that this is *161 the only constitutional right applicable in the prison context and therefore relevant to the abrogation issue. As we explain, when the District Court and the Court of Appeals revisit that issue, they should analyze Goodman’s claims to see whether they state “actual constitutional violations (under either the Eighth Amendment or some other constitutional provision),” ante, at 159 (emphasis added), and to evaluate whether “Congress’s purported abrogation of sovereign immunity [in such contexts] is nevertheless valid,” ibid. This approach mirrors that taken in Lane, which identified a constellation of “basic constitutional guarantees” that Title II seeks to enforce and ultimately evaluated whether Title II was an appropriate response to the “class of cases” at hand. 541 U. S., at 522-523, 531. The Court’s focus on Goodman’s Eighth Amendment claims arises simply from the fact that those are the only constitutional violations the Eleventh Circuit found him to have alleged properly. See App. A to Pet. for Cert, in No. 04-1236, pp. 18a-19a.
Moreover, our approach today is fully consistent with our recognition that the history of mistreatment leading to Congress’ decision to extend Title IPs protections to prison inmates was not limited to violations of the Eighth Amendment. See Lane, 541 U. S., at 524-525 (describing “backdrop of pervasive unequal treatment” leading to enactment of Title II); see also, e. g., Board of Trustees of Univ. of Ala. v. Garrett, 531 U. S. 356, 391-424 (2001) (Appendixes to opinion of Breyer, J., dissenting) (listing submissions made to Congress by the Task Force on the Rights and Empowerment of Americans with Disabilities showing, for example, that prisoners with developmental disabilities were subject to longer terms of imprisonment than other prisoners); 2 House Committee on Education and Labor, Legislative History of Public Law 101-336: The Americans with Disabilities Act, 101st Cong., 2d Sess., 1331 (Comm. Print 1990) (stating that persons with hearing impairments “have been arrested and held in jail over night without ever know *162 ing their rights nor what they are being held for”); id., at 1005 (stating that police arrested a man with AIDS and “[]Instead of putting the man in jail, the officers locked him inside his car to spend the night”); California Dept, of Justice, Attorney General’s Commission on Disability: Final Report 103 (Dec. 1989) (finding that inmates with disabilities were unnecessarily “confined to medical units where access to work, job training, recreation and rehabilitation programs is limited”). In fact, as the Solicitor General points out in his brief arguing that Title II’s damages remedy constitutes appropriate prophylactic legislation in the prison context, the record of mistreatment of prison inmates that Congress reviewed in its deliberations preceding the enactment of Title II was comparable in all relevant respects to the record that we recently held sufficient to uphold the application of that title to the entire class of cases implicating the fundamental right of access to the courts. See Lane, 541 U. S., at 533-534. And while it is true that cases involving inadequate medical care and inhumane conditions of confinement have perhaps been most numerous, courts have also reviewed myriad other types of claims by disabled prisoners, such as allegations of the abridgment of religious liberties, undue censorship, interference with access to the judicial process, and procedural due process violations. See, e.g., Vitek v. Jones, 445 U. S. 480 (1980) (procedural due process); May v. Sheahan, 226 F. 3d 876 (CA7 2000) (access to judicial process, lawyers, legal materials, and reading materials); Littlefield v. Deland, 641 F. 2d 729 (CA10 1981) (access to reading and writing materials); Nolley v. County of Erie, 776 F. Supp. 715 (WDNY 1991) (access to law library and religious services).
Indeed, given the constellation of rights applicable in the prison context, it is clear that the Eleventh Circuit has erred in identifying only the Eighth Amendment right to be free from cruel and unusual punishment in performing the first step of the “congruence and proportionality” inquiry set *163 forth in City of Boerne v. Flores, 521 U. S. 507 (1997). See Miller, 384 F. 3d; at 1272, and n. 28 (declining to entertain United States’ argument that Lane requires consideration of constitutional rights beyond those provided by the Eighth Amendment); App. A to Pet. for Cert, in No. 04-1236, p. 19a (relying on Miller to find Goodman’s Title II claims for money damages barred by the Eleventh Amendment). By reversing the Eleventh Circuit’s decision in these eases and remanding for further proceedings, we not only provide the parties an opportunity to create a more substantial factual record, but also provide the District Court and the Court of Appeals the opportunity to apply the Boerne framework properly. Given these benefits, I agree with the Court’s decision to await further proceedings before trying to define the extent to which Title II validly abrogates state sovereign immunity in the prison context.

Such definition is necessary because Title II prohibits “‘a somewhat broader swath of conduct’” than the Constitution itself forbids. Lane, 541 U. S., at 533, n. 24 (quoting Kimel v. Florida Bd. of Regents, 528 U. S. 62, 81 (2000)). While a factual record may not be absolutely necessary to our resolution of the question, it will surely aid our understanding of issues such as how, in practice, Title II’s “reasonableness” requirement applies in the prison context, cf. Lane, 541 U. S., at 531-532 (explaining that Title II requires only “ ‘reasonable modifications’ ”), and therefore whether certain of Goodman’s claims are even covered by Title II, cf. App. 83, ¶ 14 (complaining of lack of access to, among other things, “television, phone calls, [and] entertainment”).